IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 17, 2013 Session

# IN RE T.M.S.

**Appeal from the Juvenile Court of Shelby County**
**No. R9309    Dan H. Michael, Special Judge**

**No. W2012-02220-COA-R3-JV - Filed July 8, 2013**

This appeal involves disestablishment of paternity. The putative father allegedly signed a voluntary acknowledgment of paternity and the child's birth certificate when the child at issue was born. The mother did not tell him at the time that she had had sexual relations with another man during the time period in which the child was conceived. The State of Tennessee, on behalf of the mother, obtained an order against the putative father, establishing parentage and setting child support. After a private DNA test showed that the putative father was not the biological father of the child, he filed a petition in juvenile court to disestablish paternity and set aside under Tenn. R. Civ P. 60. The juvenile court denied the petition, holding that the putative father did not offer proof of fraud in the procurement of his signature on the alleged voluntary acknowledgment of paternity. The putative father now appeals. On appeal, we find no voluntary acknowledgment of paternity in the record, and no evidence regarding the alleged voluntary acknowledgment of paternity, and so cannot consider it in the appeal. We reverse the trial court's denial of the putative father's petition to set aside the order establishing parentage and child support under Rule 60.02, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Laquita R. Stokes and Felicia Corbin Johnson, Memphis, Tennessee for Respondent/Appellant A.J.S., II

Robert E. Cooper, Jr. and Warren Jasper, Nashville, Tennessee for Petitioner/Appellee State of Tennessee *ex rel.* B.S.T.

## OPINION

### FACTS AND PROCEEDINGS BELOW

In March 2004, Petitioner/Appellee B.S.T. ("Mother") gave birth to T.M.S., the child at issue in this appeal. During the time period in 2003 in which the child was conceived, Mother had an "off and on" sexual relationship with Respondent/Appellant A.J.S., II ("Mr. S"). Mother was in the military during their relationship. Unbeknownst to Mr. S, Mother also had intimate relations with at least one other man during this same time period.

When the child was born, Mr. S came to the hospital. Mr. S apparently signed the child's birth certificate, though a copy of the birth certificate is not included in the record. Mother did not disclose to him at the time that she had had sexual relations with another man during the time period in which the child was conceived.

In November 2005, the State of Tennessee (the "State"), acting on behalf of Mother, filed a petition in the Juvenile Court for Shelby County, Tennessee against Mr. S, seeking an award of child support for T.M.S. The record contains no indication that this petition was ever served on Mr. S or that he had any knowledge of it. For reasons that are unexplained in the record, no action was taken for almost five years; the petition simply languished in the Juvenile Court.[1]

Without any explanation, the next thing that appears in the Juvenile Court record is an order, entered on August 26, 2010, some five years after the State's child support petition was filed. The order recites that, on August 5, 2010, the juvenile court held a hearing on the State's petition, at which "all parties of interest were before the Court" and the Juvenile Court "heard the witnesses, considered the evidence," and made its findings "upon proof introduced" at this hearing.[2] The record contains no transcript or statement of the evidence telling us what occurred at the August 5, 2010 hearing. Nothing in the order indicates whether Mr. S had representation at the hearing or whether the Juvenile Court considered lack of service of process on Mr. S or the five-year time lag between the filing of the State's child support petition and the hearing. The order simply states that Mr. S "acknowledges his obligation

---

[1]At oral argument in this appeal, counsel for the State suggested that Mother was unavailable during this lengthy time period due to her military service.

[2]While the order recites that "all parties of interest" attended the hearing and the Juvenile Court "heard the witnesses [and] considered the evidence," we note that nearly every one of the approximately half-dozen orders for continuances in the record contain the same or very similar recited language.

to support [T.M.S.]." Mr. S was ordered to pay child support in the amount of $270 per month, with a retroactive child support award in the amount of $20,570.

Apparently at some point shortly after the August 5, 2010 hearing, Mr. S secured a private DNA test for T.M.S. The DNA test indicated that "the probability of paternity is 0%."[3]

Armed with these DNA test results, in January 2011, Mr. S filed a "Petition to Disestablish Parentage" in the Juvenile Court. The petition stated that it was filed pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. It sought an order establishing Mr. S's "non-paternity" of T.M.S. and an order "setting aside the voluntary acknowledgment of paternity entered in this cause." It also asked the Juvenile Court to order DNA testing and terminate Mr. S's child support obligation.

The petition to disestablish parentage alleged that Mother "was reckless with the truth of the statements made to [Mr. S] when she failed to inform [him] that she had been having sex with at least one (1) other man at or near the time of said child's conception." It asserted that Mother "fraudulently . . . informed [Mr. S] that he was said child's biological father and based on [Mother's] representation to [Mr. S] that he was the father of said child and other statements at the time, [Mr. S] executed the Voluntary Acknowledgment of Paternity." Mr. S later filed the results of the DNA test as an exhibit to the January 2011 petition. The Juvenile Court appointed attorney Sharon Lichliter as guardian ad litem for the child.

In August 2011, Mr. S filed another petition under the same docket number, a "Petition to Rescind and Set Aside Voluntary Acknowledgment of Paternity." Citing Tennessee Code Annotated §§ 24-7-113[4] and 24-7-118,[5] this petition also sought court-ordered DNA testing, an order rescinding and setting aside the voluntary acknowledgment of paternity, and an order terminating Mr. S's child support obligation. It contained allegations similar to the previous petition, that Mother failed to disclose to Mr. S when he signed the acknowledgement of paternity that she had engaged in sexual relations with another man during the time period in which the subject child was conceived, that Mr. S had obtained private DNA testing that showed that he is not the biological father of the child, and that Mother's failure to tell him that she had been in a sexual relationship with another man

---

[3]Mr. S claimed in his petition that he could not have obtained DNA testing earlier because Mother denied him access to the child.

[4]Tennessee Code Annotated § 24-7-113 is a lengthy statute governing voluntary acknowledgments of paternity. The petition does not cite a particular subsection of the statute.

[5]Tennessee Code Annotated § 24-7-118 addresses the admissibility of DNA testing into evidence in a civil or criminal proceeding. The petition does not cite a particular subsection of the statute.

during the pertinent time period constituted "fraud and mistake of fact" that warranted the relief requested.

In September 2011, the Juvenile Court magistrate conducted a hearing. The record does not contain a transcript of the hearing. The order that resulted from the hearing indicates that the Juvenile Court magistrate treated the second petition filed by Mr. S as an amendment of the first petition.[6]

The order on the September 2011 hearing says that the State made an oral motion to exclude the results of the private DNA test Mr. S obtained, and that the Juvenile Court granted the motion "as the DNA test was not Court ordered pursuant to Rule 35 of the Tennessee Rules of Civil Procedure" but noted that the results of the test are in the Juvenile Court record. It did not reference Mr. S's request for court-ordered DNA testing. The order entered by the Juvenile Court magistrate denied Mr. S's petition to rescind or set aside. It found that Mr. S "failed to prove a mistake of fact or fraud in the procurement of his execution" of the acknowledgement of paternity. The order went on to hold "that disestablishing parentage in this matter would not be in the best interest of the child." Mr. S was ordered to continue paying child support of $270 per month.

The record indicates that Mr. S filed a motion to have the matter reheard *de novo* by the Juvenile Court Judge.[7] ***See*** Tenn. Code Ann. §§ 37-1-107 and 37-1-159. After the appointment of Juvenile Court magistrate Dan H. Michael as Special Judge for the matter, the rehearing was held in August 2012.

Mother did not appear at the August 2012 hearing; Mr. S was the only witness. Mr. S testified that during the time period in which the subject child was conceived, he and Mother had an "off and on" relationship. Mother did not indicate that she was seeing anyone else during this time, and he was not otherwise aware that she was. Mother apparently went away during 2003 in connection with her military service, and came back in 2004 for the birth of the child. Mr. S said that he went to the hospital when the child was born. At that time, he testified, he had no reason to believe that T.M.S. was not his child. Mr. S testified that, after the child was born, he signed the child's birth certificate at the hospital. He was not asked whether he executed a VAP.

---

[6]The order on the September 2011 hearing also recites that the Juvenile Court magistrate "heard the witnesses, considered the evidence . . . and proof introduced . . . ." However, since all of the Juvenile Court orders granting continuances include similar language, we hesitate to presume that the September 2011 hearing was an evidentiary hearing.

[7] The record does not contain such a motion, but a later order granting a continuance references it.

In direct examination, counsel for Mr. S asked him a number of questions about events after Mr. S signed the child's birth certificate. All of these questions were met with objections by the State, and almost all of the objections were sustained. The trial court repeatedly expressed its view that anything that occurred after the birth certificate was signed was "irrelevant" to the question of whether there was fraud in the procurement of Mr. S's signature. Mr. S testified that in 2009, Mother apparently left a telephone message for Mr. S informing him, "the baby isn't yours." This, Mr. S said, was his first indication that he might not be the child's father. Later, Mr. S testified with some interruption that a judge suggested to him that he get a DNA test, which he did.[8] Mr. S also testified briefly that he had virtually no visitation with the child except for "one Christmas," but the trial court indicated that it would not reach the question of whether disestablishment of Mr. S's paternity was in the child's best interest.

In response to questions from the guardian ad litem, Ms. Lichliter, Mr. S testified that he had no idea at the time he signed the birth certificate that another man could be the father. Mr. S said, "I would have never – I would have never signed it, if I had known." He said that he never knew that Mother dated anyone else, never heard anything to that effect, and Mother never mentioned that anyone else could be the child's father. The guardian ad litem attempted to ask Mr. S when he became aware of the State's petition for child support, which was filed in 2005 and languished for some five years. The State objected to the relevance of the question, and its objection was sustained.

---

[8]The record is unclear on whether the judge to whom Mr. S referred was another Juvenile Court magistrate.

At the conclusion of the testimony, the Juvenile Court held that "there's absolutely no evidence here of fraud in the procurement."[9]  On this basis, the Juvenile Court denied Mr. S's petition.  Mr. S now appeals.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, Mr. S raises the following issues:

> Whether the Court erred in finding that there was no fraud in the procurement of the voluntary acknowledgment of paternity (VAP) at the time the minor child's birth certificate was signed and in denying [his] petition to disestablish paternity and his petition to rescind and/or set aside the VAP and order a DNA test.

> Whether the Court erred in finding that disestablishing paternity would not be in the best interest of the child in not allowing [Mr. S] to testify to circumstances surrounding events after the child's birth and whether the Court

---

[9]In a somewhat perplexing exchange at the conclusion of the hearing, the trial court sought to explain its reasoning:

> [Counsel for Mr. S]: Your Honor, I would just point out, based on the Court saying that there's been no evidence of fraud in the procurement, [Mother] indicated that she never gave him any reason to believe that he was not the child's father. She held him out as the child's father.
> THE COURT: He testified that she continued to believe that he was the child's father.
> [Counsel for Mr. S]: Until 2009.
> THE COURT: So how could there be fraud, counsel, in the original VAP setting if she honestly believed he was the father? That's a mistake. That's not fraud.
> [Counsel for Mr. S]: Well, Your Honor –
> THE COURT: Fraud in the procurement has to be evident.
> [Counsel for Mr. S]: I don't believe that he testified that she believed it. She knew that she had –
> THE COURT: I wrote his language down: "Mom continued to believe I was the father."
> [Mr. S interjecting]: No. I was discussing about myself. You know, I was believing that –
> THE COURT: No. You said she did, sir.
>      Counsel, there's absolutely no evidence here of fraud in the procurement. Your underlying petition is hereby denied.

As noted above, Mother was not present at the August 2012 hearing.  From our careful review of the transcript of the hearing, we find no testimony by Mr. S to the effect that Mother believed he was the father of her child or continued to believe that he was the father.  Nevertheless, as discussed below, this discrepancy does not affect our holding in this appeal.

erred in finding [Mr. S's] relationship with the child after the child's birth were completely irrelevant.

Whether the Court erred in not granting [Mr. S] prospective relief under Rule 60?

On appeal, a trial court's factual findings are presumed correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d); ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001); ***In re A.N.F.***, No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at *11 (Tenn. Ct. App. Sept. 24, 2008). For the evidence to preponderate against a trial court's factual findings, it must support another finding of fact with greater convincing effect. ***In re A.N.F.,*** 2008 WL 4334712, at *11 (citing ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005)). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. ***Blackburn v. Blackburn***, 270 S.W.3d 42, 47 (Tenn. 2008); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

## ANALYSIS

A voluntary acknowledgment of paternity ("VAP") is "a mechanism by which unmarried fathers may 'legally establish their paternity without the intervention of the court.' " ***State ex rel. Parks v. Parks***, No. W2005-00957-COA-R3-JV, 2006 WL 2032560, at *6 (Tenn. Ct. App. Jan. 19, 2006) (quoting ***In re C.A.F.,*** 114 S.W.3d 524, 528 (Tenn. Ct. App. 2003); ***see also In re A.N.F.***, 2008 WL 4334712, at *13. The VAP is executed by the mother as well as the putative father; she certifies that she is the mother "and that the other signatory is the father." ***State ex rel. Dancy v. King,*** No. W2010-00934-COA-R3-JV, 2011 WL 1235597, at *3; 2011 Tenn. App. LEXIS 163, at *10 (Tenn. Ct. App. Apr. 5, 2011). The VAP establishes a legal relationship between the man who signs it and the subject child. ***Id.*** (citation omitted). The statutory procedure for a VAP is intended to make it possible to decree child support orders without first having to go through a paternity proceeding. ***In re C.A.F.,*** 114 S.W.3d at 530; Tenn. Code Ann. § 24-7-113(a) and (b)(1). "[W]hen a man executes a VAP, he acknowledges that he accepts responsibility for being a parent to the child, and most importantly, he specifically waives his right to genetic testing." ***State ex rel. Robinson v. Glenn***, No. W2006-00557-COA-R3-JV, 2007 WL 1227377, at *4 (Tenn. Ct. App. Apr. 26, 2007). Unless rescinded, a VAP is conclusive of the parentage of the man who executes it, without a court order. ***Parks,*** 2006 WL 2032560, at *6 (citing Tenn. Code Ann. § 24-7-113(a)).

The statutes set forth the procedure by which a VAP may be rescinded. Tennessee Code Annotated § 24-7-113(c) provides that a signatory to the acknowledgment may rescind it within sixty days of its execution upon the filing of certain sworn documents. ***Parks***, 2006

WL 2032560, at *6 (citing Tenn. Code Ann. § 24-7-113(c)). Once sixty days have passed, pursuant to Tennessee Code Annotated § 24-7-113(e) a voluntary acknowledgment of paternity can be challenged only under limited circumstances:

> (1) If the voluntary acknowledgment has not been rescinded pursuant to subsection (c), the acknowledgment may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact.

> (2) The challenger must institute the proceeding upon notice to the other signatory and other necessary parties including the Title IV-D agency within five (5) years of the execution of the acknowledgment, and if the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the acknowledgment of paternity, then, and only then, the court shall order parentage tests. Such action shall not be barred by the five (5) year statute of limitations where fraud in the procurement of the acknowledgment by the mother of the child is alleged and where the requested relief will not affect the interests of the child, the state, or any Title IV-D agency. Nothing herein shall preclude the challenger from presenting any other form of evidence as a substitute for the parentage tests if it is not possible to conduct such tests.

Tenn. Code Ann. § 24-7-113(e)(1) and (2). Thus, within five years after its execution, the VAP may be challenged on the basis of "fraud, duress, or a material mistake of fact" at the time of execution. Tenn. Code Ann. § 24-7-113(e)(2). Beyond the five-year statute of limitations, the man who seeks to rescind a VAP must allege fraud in the procurement by the child's mother, and he must establish that the relief requested "will not affect the interests of the child, the state, or any Title IV-D agency." Tenn. Code Ann. § 24-7-113(e)(2).

At the outset, we note that, although the decision of the Juvenile Court below appears premised on the existence of a validly executed VAP that meets the statutory requirements, there is no such document in the appellate record. Indeed, there is no evidence in the record that Mr. S executed a VAP. In the hearing below, Mr. S testified that he signed the birth certificate for the subject child; he was not asked if he executed a VAP. Of course, a birth

certificate is not the same as a VAP that meets the statutory requirements.[10]  The birth certificate for the child is not even in the appellate record.

The petition to disestablish parentage[11] filed by Mr. S refers to his execution of a "Voluntary Acknowledgment of Paternity."  Nothing in the record, however, indicates when such an acknowledgement of paternity may have been executed, so there is no way to determine whether Mr. S's petition to disestablish was filed more than five years after execution of the alleged acknowledgement of paternity, as the Juvenile Court presumed.[12]  There is no way to ascertain whether the alleged acknowledgement of paternity conformed with the statutory requirements for a VAP.  The original order requiring Mr. S to pay child support says only that he "acknowledges" his obligation to pay support; it does not reference a VAP or indicate

_____

[10] If all goes "according to Hoyle" under the statutes, the name of a putative father who is not married to the mother does not appear on the child's birth certificate unless the parties first executed a VAP. Tenn. Code Ann. § 68-3-305(b)(1) and (2)(A).  However, there is no evidence in the case at bar that this procedure was followed; the fact that Mr. S's name appears on the birth certificate does not show that a VAP was validly executed in accordance with the statutes. *See* Tenn. Code Ann. § 68-3-305(b)(2)(A) (requiring "an original, sworn acknowledgment signed by both the mother and the biological father of a child, on a form provided by the state registrar or the department of human services, is submitted to the office of vital records at any time prior to the child's nineteenth birthday."); Tenn. Code Ann. § 68-3-302(c)(1) and (2) (requiring an authorized representative of the birth institution to provide the unmarried mother and, if present, the biological father with written and oral information concerning the alternatives to, the legal consequences of, the rights, and the responsibilities arising from the completion of the voluntary acknowledgment); Tenn. Code Ann. § 68-3-305(b)(2)(B) (requiring that a VAP be in the form of an affidavit and contain social security numbers of the mother and father of the child, be approved by the state registrar and the department of human services, etc.).  *See also Price v. Price,* No. W2012-01501-COA-R3-CV, 2013 WL 1701814, at *3; 2013 Tenn. App. LEXIS 263, at *7-8 (Tenn. Ct. App. Apr. 19, 2013) (involving a married couple in which the husband was found not to be the children's biological father) ("Moreover, other than Wife's baseless assertions, we find nothing in the record indicating that Husband ever executed a VAP. We find only the children's birth certificates, which list Husband as the father and do not even include his signature.").

[11]The Juvenile Court treated the second petition as an amendment of the first; in this appeal, we will do the same. We consider the second petition as adding alternative bases for relief, rather than as a substitution for the first petition.

[12]In the course of the August 2012 hearing, the Juvenile Court Judge stated:

> THE COURT:  Let me start by saying this, your petition to rescind and set aside the VAP . . . is hereby denied. That's the August 26, 2011[] petition. You can't come in under the rules of court and under the law in Tennessee, six years later, and ask to rescind a voluntary acknowledgment of paternity. Now, you're back on your original petition . . . to disestablish filed in January of 2011.  And his responsibility, because he is past the standard application of equity in Rule 60, is to prove fraud in the procurement.

-9-

that such a document was ever submitted to the Juvenile Court for its review and consideration.

In a prior case on the disestablishment of paternity, in which the alleged VAP was not in the appellate record, this Court held that the alleged VAP was "nonexistent for purposes of this appeal." *State ex rel. Johnson v. Mayfield*, No. W2005-02709-COA-R3-JV, 2006 WL 3041865, at \*1 (Tenn. Ct. App. Oct. 26, 2006). In *Johnson*, the putative father allegedly signed a VAP at the hospital on the day the child was born. *Id.* When the State filed a petition to establish his parentage, the putative father signed a consent order acknowledging his parentage of the child and his obligation to pay child support. *Id.* The putative father later filed an action to set aside the judgment of paternity, citing the results of a privately obtained DNA test that showed he was not the father of the child. *Id.* The trial court granted the relief requested, and the mother appealed.

After reviewing the appellate record and finding no VAP, the appellate court in *Johnson* stated: "Without the alleged VAP in the record, we are unable to ascertain whether a VAP was completed in the form prescribed by the statutes. Because it is not in the record, we deem there to be no VAP prior to the consent order [the putative father signed when the State filed its parentage action against him.]" *Id.* at \*3. The appellate court then considered the case as the review of an order to set aside the consent order under Rule 60.02 of the Tennessee Rules of Civil Procedure, rather than an action to set aside a VAP under Tennessee Code Annotated § 24-7-113. *Id.* at \*3-4.

We find ourselves in a similar posture in this case.[13] As in *Johnson*, we are left with little choice but to treat the alleged VAP in this case "as nonexistent for purposes of this appeal." *Id.* at \*1. *See also Price v. Price*, No. W2012-01501-COA-R3-CV, 2013 WL 1701814, at \*3; 2013 Tenn. App. LEXIS 263, at \*8 (Tenn. Ct. App. Apr. 19, 2013). Therefore, as in *Johnson*, we consider the Juvenile Court's denial of Mr. S's Rule 60.02 request to set aside the August 2010 order in which he acknowledged his parentage of the subject child and his obligation to pay child support.

---

[13]This case is not in an identical posture to *State ex rel Johnson v. Mayfield*. In that case, the trial court had ruled in favor of the putative father and the mother appealed. *Johnson*, 2006 WL 3041865, at \*1. In a footnote, the *Johnson* Court noted that the mother, as the appellant, had an obligation to provide an appellate record that was "fair, accurate and complete." *Id.* at \*1 n.1. However, in this case, the State seeks to rely on the alleged VAP executed by Mr. S and argues that the case should be considered an action to rescind a VAP under Tennessee Code Annotated § 24-7-113. Under those circumstances, it is fair to hold that the State, if it intends to rely on the alleged VAP, has an obligation to provide this Court with a "fair, accurate and complete" record that includes the VAP.

This Court has previously discussed appellate review of the denial of a motion to set aside under Rule 60.02 of the Tennessee Rules of Civil Procedure:

> Relief under Rule 60.02 is considered "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.[2d] 289, 294 (Tenn. 1992). The function of Rule 60.02 is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). However, "[b]ecause of [the] 'principle of finality,' the 'escape valve' should not be easily opened." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)). To set aside a judgment under Rule 60.02, the burden is upon the movant to prove that he is entitled to relief, and there must be proof of the basis on which relief is sought. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000); *Brumlow v. Brumlow*, 729 S.W.2d 103, 106 (Tenn. Ct. App.1986); *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 186 (Tenn. Ct. App.1985).
>
> A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge. Accordingly, the scope of review on appeal is limited to whether the trial judge abused his discretion. *See* **[*Toney*]**, 810 S.W.2d [at 147]; *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 70 (Tenn. 1985). "An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable." *Hooker v. Sundquist*, 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002) [(citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000))]. Under an abuse of discretion standard, the trial court's decision is affirmed "so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

*Ball v. Shockley,* No. W2009-01774-COA-R3-CV, 2010 WL 3984727, at *3 (Tenn. Ct. App. Oct. 12, 2010). Rule 60.02 of the Tennessee Rules of Civil Procedure states in its entirety:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect;

(2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02 (2012).

In this case, the Juvenile Court order that adjudicated Mr. S's parentage and set his child support obligation was entered on August 26, 2010. His petition for Rule 60.02 relief was filed less than six months later, on January 7, 2011. Because Mr. S filed his petition to set aside the August 2010 order within a year, he may seek relief under Rule 60.02(1) or (2), that is, on the basis of "mistake . . . ," or "fraud. . . , misrepresentation, or other misconduct of an adverse party." Tenn. R. Civ. P. 60.02.

In this case, Mr. S testified at the August 2012 hearing that, at the time he signed the child's birth certificate, he did not know that Mother had been intimate with anyone else during the time period in which the child was conceived, and she did not tell him that there was any possibility that he was not the father or her child. The State argues that Mother made no active misrepresentation to Mr. S in order to procure his signature on the birth certificate or voluntary acknowledgment of paternity. By signing the document, the State contends, Mr. S made a conscious, voluntary decision to ignore the possibility that he was not the child's father and his choice to acknowledge paternity "was a choice that he, as an adult, willingly made." The explanation by the Juvenile Court Judge below indicates that the judge perceived that there was no fraud in the procurement of Mr. S's signature so long as Mother made no active misrepresentation to Mr. S that she had been intimate only with him and had the subjective belief at the time of execution that Mr. S was the biological father of her child.

In a recent case, our Supreme Court held that a putative father may maintain a civil tort action for intentional misrepresentation where the mother falsely told the putative father that he was the child's biological father and no one else could be. *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (noting that "intentional misrepresentation," "fraudulent misrepresentation" and "fraud" are different names for the same cause of action). The Court found that the mother's representation to the putative father that he was the child's biological father was made recklessly, without knowing whether it was true or false, because she knew that she had had sexual relations with at least one other man during the time period of conception. *Hodge,* 382 S.W.3d at 343-44.

The facts in this case are similar to the facts in *Hodge* but slightly less clear. Mr. S's testimony establishes that Mother did not disclose to him when the child was born that she had been intimate with another man during the time period in which the child was conceived. His testimony indicates that there was active misrepresentation by Mother at that time, but does not specifically recount the misrepresentation.[14] Sometime in 2009, Mother left Mr. S a telephone message to the effect that the child "isn't yours." The Juvenile Court's August 2010 order was entered after Mr. S received Mother's telephone message, but before Mr. S obtained the private DNA test showing he is not the father of the child.

It is undisputed that Mother failed to disclose to Mr. S, when the child was born and he was asked to sign the child's birth certificate as the child's father, that she had had sexual relations with at least one other man during the pertinent time period. Irrespective of any personal belief Mother may have had that Mr. S was the child's biological father, it is certainly arguable that she had a duty to speak at that time, so her failure to do so was fraudulent concealment. *See, e.g., Doe v. Catholic Bishop for the Diocese of Memphis,* 306 S.W.3d 712, 720 (Tenn. Ct. App. 2008) (when establishing fraudulent concealment, a party need not show affirmative concealment or misrepresentation because " 'failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation.' ") (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998); *Hall v. DeSaussure*, 297 S.W.2d 81, 85 ( Tenn. Ct. App. 1956)); Restatement (Second) of Torts § 551 Liability for Nondisclosure (party may be under a duty to disclose "matters known to [her] that the other is entitled to know because of a . . . relation of trust and confidence between them . . . ."); 37 Am. Jur. 2d *Fraud and Deceit* §197 (2013) ("[S]ilence is equivalent to a false representation, as required for a claim of fraudulent inducement, where circumstances impose a duty to speak, and one deliberately remains silent.").

---

[14]Mr. S was asked by Ms. Lichliter whether it was his "understanding . . . from the information provided by [Mother], that you were the father . . . At the time [T.M.S.] was born?" He responded, "Yes."

However, at the time the Juvenile Court's August 2010 order was entered, Mr. S had received the telephone message to the effect that the subject child "isn't yours." At that point, he did not know that he was not the biological father of the child, but was at least on notice that there may be some question.

Under all of these circumstances, we are satisfied that the undisputed evidence in the record establishes at least "mistake" or "other misconduct of an adverse party" within the meaning of Tenn. R. Civ. P. 60.02(1) or (2). Moreover,

> Tennessee law strongly favors requiring biological parents to bear responsibility for their own children, and . . . this policy also favors relieving putative fathers of the burden of supporting children who have been shown, through conclusive evidence such as DNA testing, not to be their natural offspring.

*Johnson,* 2006 WL 3041865, at *5 (quoting *Taylor v. Wilson*, No. W2004-00275-COA-R3-JV, 2005 WL 517548, at *4 (Tenn. Ct. App. Mar. 3, 2005)). As to the subject child, the limited evidence presented indicates that Mr. S had little to no relationship with the child at issue; Mr. S indicated in his testimony that he spent only "one Christmas" with the child and Mother otherwise denied visitation to him. In addition, as noted by the Court in *Johnson*, the State's interest in acquiring child support payments for the child are outweighed by the State's larger interest in seeing to it that children are supported by their biological fathers:

> Finally, the State has an interest in ensuring that biological and adoptive parents support their children. Further, the State has an interest in safeguarding public funds by making certain that biological parents fulfill their duties to support their children. . . . [T]he interest of the state to safeguard public funds does not outweigh Mr. Mayfield's interest to be free of his financial burden to support a child that he did not father.

*Johnson,* 2006 WL 3041865, at *6.

Under all of these circumstances, we must conclude that the Juvenile Court below erred in refusing to order DNA testing for Mr. S and the child. We remand to the trial court below for entry of an order directing such testing. If the results of the court-ordered DNA tests show that Mr S is not the biological father of the subject child, the trial court below is directed to enter an order setting aside the August 26, 2010 order establishing Mr. S's parentage and his obligation to pay child support, pursuant to Tenn. R. Civ. P. 60.02.

**CONCLUSION**

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Petitioner/Appellees State of Tennessee *ex rel.* B.S.T., for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE