IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 21, 2018 Session

# IN RE ZAYNE P.[1]

**Appeal from the Chancery Court for Carroll County**
**No. 2015-AA-190   Carma Dennis McGee, Chancellor**

_____

## No. W2017-01590-COA-R3-PT
_____

This appeal arises from a Petition to Terminate Parental Rights filed by the foster parents. The Department of Children's Services removed the child from the mother and father's custody and placed the child in the custody of the foster parents because, shortly after the child was born, the child tested positive for drugs. On the petition of DCS, the juvenile court adjudicated the child dependent and neglected based on the finding that the parents committed severe child abuse. Thereafter, DCS filed a Petition to Terminate Parental Rights based, in part, on the records provided by the case worker. Subsequently, DCS determined that the case worker had falsely reported that the parents were noncompliant with the permanency plan. Following an inquiry that revealed the parents were in substantial compliance with the permanency plan and that all drug tests were negative, DCS dismissed its petition with court approval. Thereafter, the foster parents commenced a new and independent action to terminate mother and father's parental rights; the petition also named DCS as a respondent. The foster parents subsequently filed a motion to compel joinder of DCS as a co-petitioner on the ground that Tenn. Code Ann. § 36-1-113(h)(1)(D) mandated that DCS file a petition to terminate parental rights if a juvenile court has made a finding that the parents committed severe child abuse. DCS opposed the motion on the ground that it had the discretion not to pursue termination of parental rights if a compelling reason existed. The trial court denied the motion, and the case proceeded to trial on the foster parents' petition. Following trial, the court found that the foster parents proved severe child abuse by clear and convincing evidence; however, the court determined that termination of the parents' rights was not in the child's best interests and dismissed the petition. This appeal followed. Having determined that the foster parents failed to prove by clear and convincing evidence that termination of the parents' rights was in the child's best interests, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Laura A. Keeton, Huntingdon, Tennessee, for the appellants, Charles A. and Misha A.

Chad A. Cox, Paris, Tennessee, for the appellee, Vicky B.

Robert W. Hawley, Paris, Tennessee, for the appellee, Steven P.

Jasmine McMackins, Paris, Tennessee, Guardian Ad Litem.

Herbert H. Slatery, III, Attorney General and Reporter; W. Derek Green, Assistant Attorney General, for the Tennessee Department of Children's Services.

**OPINION**

Zayne P. was born seven weeks premature in May 2014, to Vicki B. ("Mother") and Steven P. ("Father") (collectively, "Parents"). Zayne tested positive for opiates and methamphetamines at birth, and on May 30, the Tennessee Department of Children's Services ("DCS") gained temporary custody with physical custody given to foster parents, Charles A. ("Foster Father") and Misha A. ("Foster Mother") who are the petitioners in this proceeding. A permanency plan was developed and signed by Parents on June 19, 2014, and subsequently ratified by the court; it was revised and signed by Parents on October 16 and ratified by the court on November 19. In an order entered on December 10, 2014, the Henry County Juvenile Court found that Parents had committed severe child abuse by exposing Zayne prenatally to drugs. Zayne was also adjudicated dependent and neglected and has remained with the foster parents.

It was noted in the October permanency plan that Mother and Father each had a long history of substance abuse. Therefore, the plan required Parents to submit to random drug screens, attend alcohol and drug counseling at Carey Counseling, and to continue counseling and Suboxone treatment[2] at Behavioral Health Group (BHG). The desired outcome was that Parents would maintain their sobriety long-term. Parents were to comply with BHG's protocol, which included decreasing their Suboxone use until they were substance free.

It was also noted in the permanency plan that Mother and Father's home was an environmental concern with regard to animals, fleas, and lack of cleanliness. The plan required parents to provide a clean environment with working utilities and to submit to a parenting assessment and counseling services to assist Parents with parenting skills. As of October 2014, Parents received in-home services from Youth Villages to address the

---

[2] Suboxone is a drug used to treat opioid addiction.

foregoing issues.

Because Zayne was born premature and tested positive for several drugs, the permanency plan addressed Zayne's medical needs. It required that the Tennessee Early Intervention System ("TEIS") evaluate Zayne for developmental delay. It also mandated that Parents and the foster parents cooperate with Zayne's medical providers and follow through with TEIS and all other medical appointments.

The goal of the June permanency plan was "return to parent/exit custody with kin." In October, the goal of the permanency plan was amended so that Zayne would "retain permanency through adoption." Accordingly, DCS filed a Petition to Terminate Parental Rights on January 12, 2015. Thereafter, the permanency plan was updated in January 2015 and then, again, in April 2015 with the same desired outcomes and goals.

In the interim, a DCS supervisor, Bret Brooks, conducted an internal review of Zayne's DCS file and determined that a DCS case worker had falsely reported that Parents were noncompliant with the permanency plan.[3] Conversely and significantly, Ms. Brooks determined that Mother and Father had made substantial progress toward meeting their goals on the permanency plan; specifically, that all drug tests had been negative, and Parents were now providing a safe environment. Based on these findings, Ms. Brooks concluded that DCS did not have a basis upon which to pursue the petition to terminate Parents' rights.

Shortly thereafter, on June 4, 2015, DCS dismissed its Petition to Terminate Parental Rights, and on June 30, 2015, DCS added "Return to Parent" as an alternative goal in the permanency plan. In July 2015, the juvenile court permitted Parents to have significant visitation with Zayne, starting at six hours per week and progressing to unsupervised overnight visits. Shortly following, in September, the court found that Parents were compliant with the permanency plan and that their visits with Zayne were successful. As a consequence, the court approved unsupervised overnight visitation every weekend beginning in October 2015. The weekend visits have continued ever since.

Following the September 2015 hearing, the foster parents (collectively, "Petitioners"), filed a Petition to Terminate Parental Rights and for Adoption on the grounds of willful failure to provide support, Tenn. Code Ann. § 36-1-102; substantial noncompliance with the permanency plan, Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2); severe child abuse, Tenn. Code Ann. § 36-1-113(g)(4); and persistence of conditions, Tenn. Code Ann. § 36-1-113(g)(3). One week later, they filed an amended Petition, adding DCS as a respondent.

---

[3] Based on Ms. Brooks' findings, the DCS caseworker, Cendy Curtis, was removed from the case.

3

The Petition also asked for a temporary restraining order suspending Zayne's visits with Parents. On September 29, the trial court granted the restraining order pending a hearing on October 8, and after the hearing, the trial court dissolved the temporary restraining order, finding no evidence that Parents' visitation with Zayne would cause him irreparable harm.

Petitioners subsequently filed a Motion to Compel Joinder of DCS to require DCS to assist Petitioners in the prosecution of the petition to terminate Parents' rights. The principal basis for the motion was that Tenn. Code Ann. § 36-1-113(h)(1) mandated that DCS file a petition to terminate parental rights if a juvenile court has made a finding that the parents committed severe child abuse. Because the Henry County Juvenile Court found severe child abuse in Zayne's case, Petitioners argued that the court should compel DCS to join Petitioners' Petition to Terminate Parental Rights.

DCS opposed the motion on the ground that it had the discretion not to pursue termination of parental rights if a compelling reason existed and insisted that Parents' substantial compliance with the permanency plan was a compelling ground. The trial court denied the motion, and the case proceeded to trial on the foster parents' petition.

Shortly following Petitioners' motion to compel joinder of DCS, Father filed a Tenn. R. Civ. P. 11 motion against Petitioners and their attorney, alleging that Petitioners "misled" the court to obtain a temporary restraining order and that the allegations set forth in the Petition were not supported by the evidence. Father argued that the filing of the Petition was "intended to harass, cause unnecessary delay, and/or needlessly increase the cost of litigation" and asked the court to award attorney's fees as a sanction. The trial court reserved judgment on Father's motion pending trial.

The petition to terminate Mother's and Father's parental rights was tried over five days,[4] during which the court heard testimony from Dr. Fred Steinberg, a psychologist who evaluated Parents on behalf of Petitioners; Debbie Jelks, Zayne's physical therapist; Heather France, Parents' drug counselor at BHG; Jamie Estrada, DCS case manager; Velvet Arnold, friend of Petitioners; Bret Brooks, DCS supervisor; Abbey Buffington, Parents' counselor at Carey Counseling Center; Jessalyn Medlock, Parents' family intervention specialist at Youth Villages; Mother, Father, Foster Mother, and Foster Father.

At the conclusion of Petitioners' case in chief, Father moved for involuntary dismissal under Tenn. R. Civ. P. 41.02 based on Petitioners' failure to prove grounds for termination and best interest by clear and convincing evidence. The court granted Fathers' motion as to willful failure to provide support, Tenn. Code Ann. § 36-1-113(g); substantial non-compliance with permanency plan, Tenn. Code Ann. § 36-1-113(g)(2);

---

[4] January 31, February 8, March 8, April 13, and May 4 of 2017.

and abandonment, Tenn. Code Ann. § 36-1-102(1)(A)(iv).[5] The trial court denied the motion as to severe child abuse, Tenn. Code Ann. § 36-1-113(g)(4); persistence of conditions, Tenn. Code Ann. § 36-1-113(g)(3); and best interest, Tenn. Code Ann. § 36-1-113(i), and the trial moved forward on the remaining issues.

At the conclusion of the trial, the court determined that Petitioners had not proven persistence of conditions:

> The child was removed due to the parents' use of illegal drugs and the child testing positive for drugs at birth. There is no proof that the parents continue to abuse illegal drugs. They are both currently on Suboxone, for which they have prescriptions and receive regular monitoring. There is not proof that there are any other factors or conditions which prevent the child's safe return to [Parents]. All case workers called as witnesses testified that [Parents'] home was safe and appropriate and that there were no barriers or safety concerns in returning the child to [Parents'] care.

The court determined that while Petitioners proved that Parents had committed severe child abuse by clear and convincing evidence, Petitioners did not prove that it would be in Zayne's best interest to terminate Parents' parental rights. Examining the best interest factors in Tenn. Code Ann. § 36-1-113(i), the court found that Parents maintained regular visitation with Zayne, that Parents provided financial support to him, that Parents established a meaningful relationship with Zayne, that both parents had been compliant with drug treatment, and that they provided a safe and appropriate environment. The court also denied Father's Tenn. R. Civ. P. 11 motion.

Accordingly, the trial court dismissed the Petition, and Petitioners appealed.

**ISSUES**

Petitioners present three issues for our review:

I.     Did the trial court err in denying the Petitioners' motion to compel DCS to join in the Petition to Terminate Parental Rights pursuant to Tenn. Code Ann. § 36-1-113(h)(1)?

II.    Did the trial court err in finding that Petitioners did not prove the statutory ground of Tenn. Code Ann. § 36-1-113(g)(3), persistence of conditions, by clear and convincing evidence?

III.   Did the trial court err in finding that Petitioners did not show by clear and convincing evidence that termination was in the child's best interest?

---

[5] The trial court acknowledged that abandonment was not specifically listed as a ground in the Petition, but found that Petitioner made references to it.

Additionally, Father asks us to consider whether the trial court erred in denying his motion for Tenn. R. Civ. P. 11 sanctions.

## STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children under both the United States and Tennessee Constitutions. *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002) (citing *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972)). This right is superior to the claims of other persons and the government, but it is not absolute; the state may terminate a person's parental rights under certain circumstances. *In re Heaven L.F.*, 311 S.W.3d 435, 438 (Tenn. Ct. App. 2010); *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982).

Under Tennessee law, "[t]o terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). We review findings of fact made by the trial court de novo upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *In re F.R.R.*, 193 S.W.3d at 530 (quoting Tenn. R. App. P. 13(d)).

However, because of the heightened burden of proof in termination proceedings, this court must make its own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010). The trial court's ruling regarding whether the evidence sufficiently supported termination is a conclusion of law, which we review de novo with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524.

## ANALYSIS

### I. JOINDER OF DCS AS A PETITIONER

Petitioners argue that the trial court erred by not compelling DCS to join in their Petition to Terminate Parental Rights pursuant to Tenn. Code Ann. § 36-1-113(h)(1). DCS concedes that the statute requires it to file a Petition to Terminate Parental Rights when a juvenile court makes a finding of severe child abuse as it did in this case; however, subsection (h)(2)(B) of Tenn. Code Ann. § 36-1-113 gives it the discretion not to file or maintain an action if it determines that a compelling reason exists.

Tenn. Code Ann. § 36-1-113 provides in pertinent part:

(h)(1)The department shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for adoption, under the following circumstances:

.    .    .

(D) If a juvenile court has made a finding of severe child abuse as defined at § 37-1-102.

(2) *At the option of the department, the department may determine that a petition to terminate the parental rights of the child's parents shall not be filed* (or, if such a petition has been filed by another party, shall not be required to seek to be joined as a party to the petition), if one of the following exists:

.    .    .

(B) The department has documented in the permanency plan, which shall be available for court review, *a compelling reason* for determining that filing such a petition would not be in the best interests of the child[.]

(Emphasis added).

In its opposition to the motion to compel joinder, DCS filed its permanency plans with the trial court to establish that it had a compelling reason not to pursue the petition to terminate Parents' rights. After reviewing the permanency plans and hearing from the parties, the trial court determined that DCS had a compelling reason not to pursue the petition and denied the motion to compel. We agree.

The permanency plans submitted to the trial court adequately document Parents' compliance. For example, the permanency plan dated January 22, 2015 states:

[Mother] went to Carey Counseling for intake, she attended counseling there for A & D issues, she went to meetings and is still in the same Suboxone Treatment Clinic since July of 2014. [Mother] has provided DCS and the clinic with negative urine drug screens…except for being positive for Suboxone, (Bup.). [Mother] had a negative hair follicle in January 2015. [Mother] participates in visits, has offered to provide items for Zayne. [Parents] have started their own business selling produce…and they feel they are doing well with it.

7

The January plan gives a similar status update for Father, stating that his drug screens are negative, he is attending counseling, he "has made forward progress with perm[anency] plan tasks," and regularly attends visitation with Zayne.

All subsequent plans state that Parents are compliant with counseling services, continue to have negative drug screens (aside from Suboxone) and regularly attend scheduled visitation. The last status update submitted to the court, dated December 7, 2015, states, "The parents have been compliant with services and we will be asking for unsupervised visitation[.] [T]hen, if there are no issues we will begin a [trial home visit] hopefully starting the end of Oct[ober]."

Petitioners argue that Parents did not comply with the permanency plans by continuing to use Suboxone. While the permanency plans list sobriety as the desired outcome, each plan requires that Parents follow the drug clinic's treatment protocol to achieve the desired outcome. The permanency plans explain that Parents' Suboxone use is a component of their addiction treatment, and Parents' use is monitored by a physician at a drug treatment clinic.

Based on the foregoing, we affirm the decision to deny Petitioners' motion to compel joinder of DCS as a co-petitioner.

II. Grounds for Termination

In order to terminate the parental rights of a biological parent, a petitioner must first prove, by clear and convincing evidence, at least one of the listed grounds for termination. *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); Tenn. Code Ann. § 36-1-113(g).

A. Persistence of Conditions

One of the grounds Petitioners alleged was persistence of conditions, Tenn. Code Ann. § 36-1-113(g)(3). In this case, the trial court concluded that Petitioners did not prove persistence of conditions by clear and convincing evidence. We agree.

Tenn. Code Ann. § 36-1-113(g)(3) provides

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians,

8

still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

While Zayne has been in Petitioners' physical custody for approximately three years, the evidence presented at trial shows that Parents fully complied with the permanency plan, and significantly, with drug treatment. The evidence further shows that Parents provided a safe environment for Zayne.

Jamie Estrada, Zayne's DCS case worker testified that she visited Parents' home unannounced at least once per month from May to October 2016. She testified that the home was safe, clean, and appropriate for Zayne. She stated that Mother and Zayne "appeared to be very bonded," and that Zayne called Mother "Mom" or "Mommy." She testified that Parents were compliant with counseling services and continued to have negative drug screens, aside from Suboxone.

Jessalyn Medlock, Parents' Family Intervention Specialist from Youth Villages, testified that she provided in-home counseling that focused on parenting skills. She testified that she visited Parents' home weekly beginning in October of 2015 and that the home was appropriate and safe for Zayne, that Zayne had proper bedding and toys, and that Zayne appeared to have a bond with Mother and Father. Ms. Medlock testified that Parents followed through with her recommendations on how to parent Zayne and that both seemed motivated to provide an appropriate environment for him.

Heather France, a counselor at BHG, testified that Parents complied with drug treatment and had no positive drug screens since beginning drug treatment in June 2014. As for Parents' Suboxone use, Ms. France testified that "[i]f Suboxone is taken as prescribed, it doesn't have a physical impact—no adverse side effects in terms of behavior or being able to function normally." Ms. France had no concerns with Parents' continued use of Suboxone stating that each program is individualized and there is no set time frame for weening off the drug. Ms. France emphasized that a physician at BHG closely monitored Parents' Suboxone use.

Considering the foregoing testimony at trial, we have determined that Petitioners failed to prove persistence of conditions by clear and convincing evidence. Accordingly, we affirm the trial court's decision.

9

B. Severe Child Abuse

The only ground for termination that was proven was the ground of severe child abuse.[6] Parents do not challenge the trial court's finding that Petitioners proved the ground of severe child abuse pursuant to the clear and convincing standard. Nevertheless, "in an appeal from an order terminating parental rights, the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525-26.

Tenn. Code Ann. § 36-1-113(g)(4) provides, in pertinent part, that the court has grounds to terminate a parent's parental rights if "[t]he parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court." Here, the Henry County Juvenile Court found that Mother and Father had committed severe child abuse in an order entered on December 10, 2014, which is a final and non-appealable judgment. Therefore, Petitioners proved severe child abuse by clear and convincing evidence.

C. Grounds Not Proven

The trial court found the evidence insufficient to prove any of the other grounds alleged. More significantly, the trial court did not terminate Parents' rights because it found that termination of Parents' rights was not in the child's best interests.

This is not an appeal from an order terminating parental rights. Therefore, the mandate from *In re Carrington H.* to review all grounds on which termination of parental rights is based does not apply. As a result, we need not consider the grounds that were not proven and shall focus our attention on the best interest analysis.

III. BEST INTERESTS OF THE CHILD

If one of the statutory grounds for termination is proven by clear and convincing evidence, as it was here, a parent's rights may be terminated if termination is in the best interests of the child. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

The legislature has identified nine statutory factors for the court to consider in conducting a best-interests analysis, *see* Tenn. Code Ann. § 36-1-113(i); however, this list is not exhaustive, and the court need not find the existence of every factor before it may conclude that terminating an individual's parental rights is in the best interests of a child. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Instead, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *In re*

---

[6] The trial court found the evidence insufficient to prove any of the other grounds alleged.

*Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005). Further, in considering a petition to terminate parental rights, the court is called to make a determination of the child's best interests from the perspective of the child rather than the parent. *In re Heaven L.F.*, 311 S.W.3d at 441.

The first statutory factor to be considered is "whether the parent or guardian has made such an adjustment in circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian." Tenn. Code Ann. § 36-1-113(i)(1). The trial court noted that "all witnesses who have been inside the [Parents'] home attest to its safe condition." As previously stated, Ms. Estrada, Zayne's DCS caseworker, and Ms. Medlock, Parents' family intervention specialist, both testified that they visited Parents' home numerous times and found it to be safe and appropriate for Zayne. Therefore, we agree with the trial court that this statutory factor weighs against termination.

The second statutory factor to be considered is "whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible." Tenn. Code Ann. § 36-1-113(i)(2). The trial court found that while Parents' continued use of Suboxone was a concern, Parents complied with drug treatment, counseling services, parenting classes, and narcotics anonymous, and Parents no longer used illegal substances. The court also found that Parents had a home and both had gainful employment.

Heather France, Parents' drug counselor at BHG; Jamie Estrada, DCS case manager; Bret Brooks, DCS supervisor; Abbey Buffington, Parents' counselor at Carey Counseling Center; and Jessalyn Medlock, Parents' family intervention specialist at Youth Villages all testified that Parents complied with services. Ms. France testified that Parents have had negative drug screens since June 2014 and that Parents' Suboxone use is a component of their drug treatment. Ms. Medlock and Ms. Estrada testified that Parents have a safe home, and Parents testified that they are employed. Therefore, this factor weighs against termination.

The third factor to consider is "whether the parent or guardian has maintained regular visitation or other contact with the child." Tenn. Code Ann. § 36-1-113(i)(3). The trial court found that for well over a year, Parents had overnight visitation with Zayne every weekend. Prior to that, Parents had weekly visitation. The testimony supports this finding, and it is undisputed. This factor also weighs against termination.

The fourth factor to consider is "whether a meaningful relationship has otherwise been established between the parent or guardian and the child." Tenn. Code Ann. § 36-1-113(i)(4). The trial court found that Parents had established a meaningful relationship with Zayne, and the evidence does not preponderate against this finding. Dr. Fred

11

Steinberg, Petitioners' expert witness, testified that there appeared to be a bond between Mother and Zayne. Ms. Medlock testified that Zayne called Mother and Father "Mom" and "Dad" and that Zayne was excited to see Father when he returned home from work. Ms. Estrada testified that Zayne had a strong bond with Mother, and he seemed happy and comfortable in Parents' home. Therefore, this factor also weighs against termination.

The fifth factor to consider is "the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition." Tenn. Code Ann. § 36-1-113(i)(5). The Court found that because Petitioners have served as Zayne's primary caretakers since birth, the change in caretakers would be difficult for Zayne but that the obstacle was not insurmountable. Zayne spent weekends with Mother and Father, and Ms. Estrada testified that Zayne appeared comfortable and happy in Parents' home. As to Zayne's medical care, Debbie Jelks, Zayne's physical therapist, testified that Father regularly attended Zayne's physical therapy appointments. Ms. Estrada testified that Mother and Father consistently attended Zayne's medical appointments, and she had no concerns regarding his medical condition while in their care. Petitioners argued that Father was unlikely to follow through with Zayne's physical therapy appointments because Father did not believe Zayne needed treatment. Ms. Estrada testified that Father told her he did not think Zayne needed physical therapy; however, she also testified that Zayne was meeting his goals in therapy, and she was equally skeptical about the continuing need for it. Therefore, this factor weighs against termination.

The sixth factor is "whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." Tenn. Code Ann. § 36-1-113(i)(6). The Henry County Juvenile Court found that parents had committed severe child abuse by exposing Zayne to drugs prenatally. None of the parties dispute this finding, and it weighs in favor of termination.

The seventh factor is "whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner." Tenn. Code Ann. § 36-1-113(i)(7). As previously stated, witnesses testified that Parents' home was safe. None of the parties presented any proof of criminal activity in the home. Ms. France and Ms. Estrada testified that Parents had negative drug screens, except for Suboxone, which was being monitored by a physician at BHG. Ms. France testified that Suboxone use did not interfere with Parents' ability to function normally, and Ms. Medlock and Ms. Estrada testified that Parents' Suboxone use had no effect on Parents' ability to care for Zayne. Therefore, this factor weighs against termination.

The eighth factor the court considered was "whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child." Tenn. Code Ann. § 36-1-113(i)(8). Dr. Steinberg, a forensic psychologist, evaluated Father and Mother on behalf of Petitioners. Dr. Steinberg diagnosed Father with an opioid addiction and anti-social personality disorder. He determined that Father had a high likelihood of relapse and that this would negatively affect Father's ability to parent.

Dr. Steinberg testified that Mother also had an opioid addiction and showed simplistic thinking. Dr. Steinberg testified that Mother minimized her substance abuse problem and, like Father, had a high likelihood of relapse, which would affect her ability to parent. However, Dr. Steinberg also testified that he did not review any of the reports from Parents' drug treatment providers, counselors, or DCS case workers. Consequently, Dr. Steinberg conceded his findings were inconclusive.[7]

Nevertheless, even if Parents were likely to relapse, the trial court opined that "the Court cannot base this decision on factors which may occur in the future. The Court must analyze the case based upon existing facts." We agree. Here, Parents' drug treatment providers, counselors, and representatives from DCS all testified that Parents presently provided a safe and stable environment for Zayne. Therefore, factor eight weighs against termination.

The ninth and final factor the court considered was "whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to Tenn. Code Ann. § 36-5-101." Tenn. Code Ann. § 36-1-113(i)(9). The court found that Mother and Father paid child support during the child's life, and Petitioners do not dispute this finding on appeal. This factor weighs against termination.

Thus, considering all of the factors together, the trial court determined that Petitioners did not show by clear and convincing evidence that termination was in Zayne's best interest.

Petitioners and the guardian ad litem argue that Parents' past history of relapse and parents' mental condition make it highly likely that Parents will relapse, which weighs in favor of termination. Even so, the Tennessee Supreme Court held in a recent termination case that the risk of relapse "is a possibility only" and does not amount to

---

[7] The testimony was as follows:

Q. If that data [from the reports] existed and you didn't have it, would that result in your evaluation that you conducted as being inconclusive?
A. I guess you could say that, but on the other hand, I would expect you to forward that to me if it did exist.

13

clear and convincing evidence that termination is in the best interest of the child. *In re Gabriella D.*, 531 S.W.3d 662, 686 (Tenn. 2017). The proof shows that Parents maintained regular visitation with Zayne, that Parents provided financial support to him, that Parents established a meaningful relationship with Zayne, that both parents had been compliant with drug treatment, and that they provided a safe and appropriate environment. Therefore, we affirm the trial court.

## IV. TENN. R. CIV. P. 11 SANCTIONS

Father takes issue with the trial court's denial of his motion for Tenn. R. Civ. P. 11 sanctions against Petitioners and their attorney.

An appellate court's review of a trial court's ruling on a Tenn. R. Civ. P. 11 motion is under an abuse of discretion standard. *Hooker v. Sundquist*, 107 S.W.3d 532 (Tenn. Ct. App. 2002). Pursuant to the standard of review articulated in *Lee Medical, Inc. v. Beecher*, we are to review a discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the trial court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the trial court's decision was within the range of acceptable alternative dispositions. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). When reviewing a trial court's discretionary decision, we review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and the trial court's legal determinations de novo without any presumption of correctness. *Id.* at 525.

Tenn. R. Civ. P. 11 governs the imposition of sanctions for pleadings and motions, and provides in pertinent part:

> By presenting to the court…a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—
>
> (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]

Tenn. R. Civ. P. 11.02.

Generally stated, Rule 11 authorizes the trial court to impose sanctions if Rule 11.02 is violated, the moving party gives the required notice to the offending party, and the offending party fails to remedy any pending violation of Rule 11. Tenn. R. Civ. P. 11.03. The rule provides two means for initiating sanctions for violating Tenn. R. Civ. P.

11. *Id.* One of those means is upon motion of a party; the other is on the court's initiative. *Id.* When initiated by a party, the motion must "describe the specific conduct alleged to violate [Rule] 11.02," and the movant must serve it on the opposing party twenty-one days before filing it with the court. *Id.* This "safe-harbor" provision gives the opposing party the opportunity to remedy the pleading or motion before the court reviews it. *Id.*

Here, Father served his motion on Petitioners on October 7, 2015, and subsequently filed it with the court on December 4, 2015. The basis of the motion is that the petition and the request for a temporary restraining order were without grounds and "intended to harass, cause unnecessary delay, and/or needlessly increase the cost of litigation." Specifically, Father contends Petitioners and their attorney "failed to acknowledge, and/or failed to do their due diligence" to determine that Petitioners were fully compliant with DCS services.

Having heard all the evidence in the case, the trial court denied Rule 11 sanctions, and we find no abuse of discretion. Though DCS and other service providers asserted that Parents complied with services, Petitioners argued that Parents' continued use of Suboxone did not comply with the permanency plan, and Parents' past history of relapse weighed in favor of termination. Finding no evidence of an improper purpose on Petitioners' part, we affirm the trial court.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Charles A. and Misha A.

_____
FRANK G. CLEMENT JR., P.J., M.S.

15