IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2002 Session

## JOHN JAY HOOKER v. DON SUNDQUIST, ET AL.

**Direct Appeal from the Circuit Court for Davidson County
No. 01C-3804     Thomas W. Brothers, Judge**

---

**No. M2002-01207-COA-R3-CV - Filed December 19, 2002**

---

This case involves an appeal from an order denying a motion for Rule 11 sanctions.  We reverse and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ROBERT W. WEDEMEYER, SP. J., joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore Solicitor General, and Janet M. Kleinfelter, Senior Counsel, for the Appellants, Governor Don Sundquist, Paul Summers, Lt. Governor John Wilder and Jimmy Naifeh.

John Jay Hooker, *Pro se*.

### OPINION

Plaintiff (Appellee) John Jay Hooker (Mr. Hooker) filed a complaint on December 13, 2001, against Governor Don Sundquist, individually and in his official capacity, and Lieutenant Governor John Wilder, Speaker Jimmy Naifeh, and Attorney General Paul Summers, in their official capacities.  The complaint alleged that Governor Sundquist had violated Art. X, § 3 of the Tennessee Constitution during his 1998 re-election campaign by holding fundraisers where "he served 'meat and drink' in the process of party-giving to voters, lobbyists and friends 'to be

elected'. . . ."[1] Mr. Hooker filed an amended complaint on December 17, 2001 that was virtually identical to the original complaint.

On January 18, 2002, the Defendants (Appellants) filed a motion to dismiss the amended complaint on the grounds that it failed to state a claim upon which relief could be granted. Defendants asserted that the amended complaint contained no factual support for any allegations contained therein and was contrary to existing law. Defendants relied on *State ex rel. Anderson v. Fulton*, 712 S.W.2d 90 (Tenn. 1986), and a decision of the Davidson County Chancery Court in *Hooker v. McWherter*, Case No. 98-2246-III (July 31, 1998), both cases involved similar allegations[2] and were dismissed for failing to state a claim for which relief could be granted.

---

[1]The complaint also stated that it was the "fourth in a series of cases filed in the Circuit Court to 'reform the election process in Tennessee' to make the election process lawful under both the Federal and State Constitutions." At least one of these cases, *Hooker v. Bredesen,* Davidson County Eighth Circuit Court No. 01-C-1199, involved the same issue as that presented in this case. While we tangentially address the merits of Mr. Hooker's underlying case in this opinion, only insofar as necessary to decide the propriety of awarding sanctions, such merits were squarely addressed by this court on appeal in *Hooker v. Bredesen*, No. M2002-01025-COA-R3-CV, 2002 Tenn. Ct. App. LEXIS 766, at *1 (Tenn. Ct. App. October 30, 2002), where this Court stated:

> The Complaint in this case does not factually assert that Bredesen "had given anything of value in exchange for a promise to vote for him" in the Governor's election.
>
> Article X, § 3 of this State's Constitution, as the Fulton Court held, proscribes a candidate's giving any gift or reward in meat, drink, money or otherwise in exchange for the elector's vote. As we understand appellant's argument, he concedes as much, but sincerely contends that Fulton did not address the second sentence of Article 10, § 3, which according to appellant "requires no quid pro quo or i.e., giving food and drink in exchange for a vote," and he further argues that the second sentence simply requires that food and drink be given to prospective voters without their promise to vote for the candidate. We cannot agree.
>
> The first sentence of § 3 establishes that an elector who receives any gift or reward for his vote from the candidate is guilty of a crime, as established by law. The second sentence of the section sets forth the disqualification for the candidate who gives "such reward" to the voter. As we noted, the prohibition established in this section is the giving by the candidate any of the items mentioned to the voter in exchange for the voter's vote. Absent the giving and receiving of "such reward" for the vote, there can be no violation of § 3.
>
> Plaintiff argues the second sentence of the section is self-executed and relies on *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980). The *Crutchfield* Court merely explained that the second sentence is self-executing in the sense that a candidate who gives "such reward" for the voter's vote is automatically disqualified, while the voter can only be punished by a prosecution under a "law" enacted by the Legislature. Since the Complaint fails to allege a factual violation of Article X, § 3, it fails to state a cause of action.

*Id.* at *5-6.

[2]Mr. Hooker correctly notes that the facts of *Anderson* do not involve a political fundraiser. *McWherter*, however, alleged violations of Art. X § 3 stemming from fundraisers for the reelection of two Tennessee State Supreme

(continued...)

Defendants also served Mr. Hooker with a motion for sanctions pursuant to Tenn. R. Civ. P. 11, asserting that the amended complaint was both legally and factually frivolous and thus violative of Tenn. R. Civ. P. 11.02(2) and (3). The motion and supporting memorandum of law were served on Mr. Hooker January 18, 2002. Rather than withdraw or dismiss his amended complaint, Mr. Hooker filed a response in opposition to Defendants' motion to dismiss. The court granted Defendants' motion to dismiss by an order dated February 26, 2002. On February 8, 2002 the Defendants filed their motion for sanctions with the court. After a hearing on February 22, 2002 the court denied Defendants' motion for sanctions finding, *inter alia*, "the chilling affect [sic] on the average citizens of this state so greatly outweighs the inconvenience that's associated with this lawsuit that I cannot see that sanctions are appropriate." The order incorporating this ruling was entered by the court April 1, 2002.

On May 17, 2002, the Defendants filed a notice of appeal of the trial court's order denying the motion for sanctions. On May 24, 2002, Mr. Hooker filed a motion to strike Defendants' notice of appeal on the grounds that it was premature. Mr. Hooker then filed an amended motion to strike on May 31, 2002, asserting that the Defendants' notice of appeal was untimely filed. A hearing on the motion to strike was held on June 21, 2002, at which time the trial court found that it was without jurisdiction and denied Mr. Hooker's motion by an order dated June 28, 2002.

Appellant presents a single issue for review: Did the trial court abuse its discretion in denying Defendant's motion for sanctions?

### *Standard of Review*

Our review of the trial court's ruling on a Rule 11 motion is under an abuse of discretion standard. *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992). An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000). Our review of Rule 11 decisions is governed under this deferential standard since the question of whether a Rule 11 violation has occurred requires the trial court to make highly fact- intensive determinations regarding the reasonableness of the attorney's conduct. *Krug*, 838 S.W.2d at 205. We review the trial court's findings of fact with a presumption of correctness. Tenn. R. App. P. 13(d).

---

[2](...continued)

Court Justices. Excepting the defendants in each case, *McWherter* is nearly factually identical to the case at issue.

*Discussion*

When an attorney[3] signs a motion, document, or other paper submitted to the court, he certifies to the court that he has read it, that he has reasonably inquired into the facts and law it asserts, that he believes it is well-grounded in both fact and law, and that he is acting without improper motive. ***Andrews v. Bible***, 812 S.W.2d 284, 287 (Tenn. 1991). Rule 11 sanctions emphasize to the attorney that his signature is not meaningless, but conveys a message to the court for which he alone is responsible. ***Id.*** at 288. Rule 11 establishes that an attorney who signs such a paper without the required belief is subject to appropriate sanction by the court. ***Id.*** This State's Supreme Court has characterized such sanctions as a "potent weapon that can and should be used to curb litigation abuses." ***Id.*** at 292. Our Supreme Court has, however, tempered this mandate by advising trial courts that, while they should impose sanctions when a Rule 11 violation is found, they should do so only with the utmost care. ***Id.*** In appropriate cases, sanctions may include payment of the opposing party's legal expenses. ***Id.*** at 288.

The Tennessee Supreme Court has established the standard for determining whether an attorney's conduct is sanctionable under Rule 11 as one of objective reasonableness under the circumstances as they existed when the document was signed. ***Id.*** "Sanctions are appropriate when an attorney submits a motion or other paper on grounds which he knows or should know are without merit, and a showing of subjective bad faith is not required." ***Boyd v. Prime Focus, Inc.***, 83 S.W.3d 761, 765 (Tenn. Ct. App. 2001). In determining whether a Rule 11 violation has occurred, the trial court should consider all circumstances bearing on the reasonableness of the attorney's conduct. ***Andrews***, 812 S.W.2d at 293, fn4. Such circumstances may include the attorney's experience and past performance, the general standards of conduct of the bar, and whether the attorney's actions were the result of neglect, incompetence, willfulness, or deliberate choice. ***Id.***

In the present case, Appellants contend, ***inter alia***, that sanctions are appropriate in this instance because the issue raised by Mr. Hooker had previously been decided in the ***Anderson*** case. Appellants also stress that Mr. Hooker himself had been unsuccessful in ***McWherter***, a case also alleging a violation of Article X § 3 of the Tennessee Constitution by a candidate for office. In ***McWherter***, Mr. Hooker alleged in count nine of his amended complaint the following:

> 9. On information and belief, it is averred that these campaign contributions . . . are solicited where the judges and lawyers were and/or will be present, at which time the hosts of the receptions provided or will provide meat and drink and the guests have or will provide money, all in violation of Article X, Section 3 of the Tennessee Constitution, outlawing the use of meat, drink and money in the election process for the procurement of votes.

---

[3]While Mr. Hooker acted *pro se* in these proceedings, it should be noted that he is a licensed attorney.

In the present case Mr. Hooker alleges, also in count nine of his complaint, the following:

9. On "various and divers" occasions Gov. Sundquist "directly or indirectly" held "fund-raisers"where participants contributed money to his campaign for reelection and he served "meat and drink" in the process of party-giving to voters, lobbyists and friends "to be elected," violating Article X§3[sic]. Such conduct included campaign fund-raisers, given for the purpose of being elected, at the Governor's residence, at Opryland Hotel, and many other places all across Tennessee known to Gov. Sundquist and subject to stipulation, discovery and/or proof.

Mr. Hooker goes on to state, in count seventeen, that

the essence of this lawsuit is not about the voters who voted for Gov. Sundquist, because the second sentence of Article X§3 [sic] addresses the conduct of the candidate and the violation by the candidate occurs independently of the first sentence and the conduct of the voters. The second sentence mandates that any candidate who gives "meat, drink, money or otherwise" "to be elected" violates the plain language of the sentence. . . .

Mr. Hooker then proceeds, in count eighteen, to assert that

the . . . Chancellor [], in [*McWherter*] said that the provision requires a *quid pro quo* and agreement by the voter with the candidate that the "meat, drink, money or otherwise" given "to be elected" as a reward is for the vote of the voter "for his vote." This, it is averred, is in error as [the] Chancellor . . . ignored the fact that the word "reward" and the word "gift" are used interchangeably. . . .

This statement, that the Chancellor erred in the *McWherter* decision, is essentially an acknowledgment by Mr. Hooker that the facts of this case are no different than those in *McWherter*. If Mr. Hooker took issue with the trial courts ruling in *McWherter*, his proper recourse was to appeal the decision to this Court. Mr. Hooker failed to follow this course[4] and, the doctrine of *res judicata* barring his ability to bring the same claim against the same defendants, chose to urge another trial court to look at the same facts, albeit with different defendants, and reach some other conclusion. This he cannot do.

Applying the Tennessee Supreme Court's standard of "objective reasonableness under the circumstances" to the facts presented in this case results in the inescapable conclusion that Mr. Hooker, as "an attorney[, filed the complaint] on grounds which he kn[ew] or should [have] know[n] [were] without merit. . . ." *Boyd*, 83 S.W.3d at 765. The reasonableness of Mr. Hooker's belief must be evaluated in light of the circumstances as they existed when the

---

[4]We find it noteworthy that at the time of the *McWherter* decision, Mr. Hooker stated that "my main interest is to appeal. I'm going to be true to the quest."

document was signed. *Andrews*, 812 S.W.2d at 288. In this case, the complaint at issue was signed subsequent to the dismissal of the *McWherter* case, making Mr. Hooker's belief that his complaint was "well-grounded in both fact and law" an unreasonable one. "An attorney who signs a paper without the required substantiated belief 'shall' be penalized by 'an appropriate sanction.'" *Andrews*, 812 S.W.2d at 288. "This sanction may, but need not, include the payment of the other party's expenses." *Id.*

The trial court, in reciting its reasons for denying sanctions, stated "I realize there's [sic] been other actions and I'm not a party to those." The court makes no mention of reviewing these prior actions to ascertain if the complaint in those actions mirrored the facts presented in this case. A review of these other actions was required as the question of whether a Rule 11 violation has occurred requires the trial court to make highly fact- intensive determinations regarding the reasonableness of the attorney's conduct. *See Krug*, 838 S.W.2d at 205. The trial court's failure to directly address the similarity or differences between these other actions, actions which were brought to the attention of the court by the party seeking the imposition of sanctions, does not rise to the level of a "highly fact-intensive determination" of whether the attorney's conduct warrants sanctions. *See id.* Accordingly, we reverse the trial court's dismissal of the motion for sanctions against Mr. Hooker and remand the cause so that an appropriate sanction may be issued.

The judgment of the trial court is, therefore, reversed. Cost of this appeal is taxed to the Appellee, John Jay Hooker, for which execution, if necessary, may issue.

_____
DAVID R. FARMER, JUDGE