# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 8, 2025 Session

## KELLY D. BUSH, ET AL. v. COMMERCE UNION BANK D/B/A RELIANT BANK, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 24CV-53410     Joseph A. Woodruff, Judge**

_____

### No. M2024-01007-COA-R3-CV

_____

Over ten years ago, Commerce Union Bank, d/b/a Reliant Bank ("the Bank") obtained a deficiency judgment for a property owned by Dr. Byron V. Bush and Kelly D. Bush ("Plaintiffs") that Plaintiffs used to secure a loan. Since then, Plaintiffs have filed and lost four appeals related to this case. In March 2024, Plaintiffs filed a complaint for fraudulent breach of contract against the Bank; the late Devan D. Ard, Jr., the former Bank president; Rick Belote, Senior Vice President of the Bank; and William Ronald DeBerry[1] (collectively, "Defendants"). Defendants filed a motion for sanctions pursuant to Tennessee Rule of Civil Procedure 11.03. The Chancery Court for Williamson County ("the Trial Court") granted the motion, dismissed Plaintiffs' complaint with prejudice, awarded Defendants attorney's fees and expenses incurred in filing the motion, and imposed a screening mechanism on any future filings by Plaintiffs. Plaintiffs appeal. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Kelly D. Bush and Byron V. Bush, Brentwood, Tennessee, Pro Se.

Stephen M. Montgomery, Nashville, Tennessee, for the appellees, Reliant Bank, Rick Belote, William Ronald DeBerry, and Devan D. Ard, Jr.

_____

[1] Although the complaint provides no description of DeBerry's role in this case, the United States Court of Appeals for the Sixth Circuit identified DeBerry as the former CEO and Chairman of the Bank in *Bush v. Reliant Bank*, No. 22-5656, 2023 WL 5275025, at *1 n.1 (6th Cir. Apr. 10, 2023).

# OPINION

## Background

This is not the first time this dispute has been before this Court on appeal. This Court first addressed this dispute in an appeal in 2016, explaining the initial procedural history as follows:

This is a post-foreclosure action in which the lender seeks to recover a deficiency judgment, interest, and the costs of collection. In their answer, the borrowers asserted that the loan was a nonrecourse debt; thus, they were not liable for the deficiency. Alternatively, they asserted that the property sold at foreclosure for an amount materially less than its fair market value. Following a bench trial, the trial court concluded that the loan was a full recourse debt as to both borrowers. This determination was based on, *inter alia*, the finding that all parties intended the borrowers to be personally liable. The trial court also concluded that the lender was entitled to a deficiency judgment, finding that the borrowers failed to overcome the rebuttable presumption that the foreclosure sale price was equal to the fair market value of the property at the time of the foreclosure sale. *See* Tenn. Code Ann. § 35-5-118. The trial court awarded the lender a judgment of $640,783.41, plus interest and attorney's fees, against the borrowers jointly and severally. As the foregoing indicates, our review is benefited by the trial court's Tenn. R. Civ. P. 52.01 findings of facts and conclusions of law, which disclose the reasoned steps by which the trial court reached its ultimate conclusion and enhance the authority of the trial court's decision. Having reviewed the trial court's findings of fact in accordance with Tenn. R. App. P. 13(d), we have concluded that the evidence does not preponderate against the trial court's findings and that the trial court identified and properly applied the applicable legal principles. For these reasons, we affirm.

In 2006, Byron V. Bush, D.D.S., purchased approximately five acres of unimproved commercial property in Davidson County, Tennessee, located at the southeastern corner of the intersection of Old Hickory Boulevard and Interstate 24, referred to as "StarPointe property" or "StarPointe."

On November 30, 2007, Dr. Bush and his wife, Kelly Bush (collectively "the Bushes"), entered into a Multipurpose Note and Security Agreement (the "Original Note") with Commerce Union Bank, Brentwood, Tennessee, d/b/a Reliant Bank ("Reliant"), for the original principal amount of $1,500,000. To secure the Original Note, the Bushes concomitantly

executed a deed of trust.  Thereafter, the Original Note was renewed on three occasions to defer the due date: January 14, 2010; January 14, 2011; and May 14, 2011.

When the note matured on December 30, 2011, the entire principal balance remained unpaid and outstanding.  Thereafter, the Bushes entered into a Forbearance Agreement in which they acknowledged that they were in default in the amount of $1,547,906.26 and waived all claims against Reliant.  The agreement temporarily modified their payments due under the note until June 30, 2012, and provided the Bushes an opportunity to either (1) complete a sale of StarPointe prior to the expiration of the forbearance period and pay to Reliant $1,400,000 at closing or (2) pay Reliant $1,400,000 prior to the expiration of the forbearance period.  The Bushes failed to satisfy the requirements under the agreement, and by letter dated July 23, 2012, Reliant declared the note in default, accelerated the entire principal and interest balance, and made a demand for payment in full.  When the Bushes did not cure the default, Reliant initiated foreclosure proceedings on StarPointe.

\* \* \*

The Bushes did not attend the foreclosure sale either in person or by representation.  Reliant was the only bidder, bidding $1,050,000 based upon the appraisal Reliant ordered from B.G. Jones & Company, LLC prior to the original scheduled foreclosure date that valued the property at $1,050,000, with an effective date of September 19, 2012.  Due to the foreclosure being delayed, B.G. Jones & Company, LLC provided a second appraisal, with an effective date of January 2, 2013, that also valued the property at $1,050,000.

Because the foreclosure sale price did not fully satisfy the amount due under the note, Reliant filed a complaint seeking a deficiency judgment against the Bushes in the amount of $569,706.65, plus interest and costs of collection including attorneys' fees.  In their answer, the Bushes alleged that they were not personally liable for the deficiency because the note was a nonrecourse note.  They also alleged that StarPointe was sold at foreclosure for an amount "materially less" than its fair market value, which the Bushes claimed was "at least $1.8 million dollars."

\* \* \*

The parties agreed and the trial court found that there were two issues to be decided: (1) whether the note made by the Bushes to the order

of Reliant was intended by the parties to be a nonrecourse note; and (2) whether Reliant bid materially less than fair market value for StarPointe at the foreclosure sale.

At the conclusion of the trial, the court entered separate orders addressing each issue, both of which include extensive findings of fact and conclusions of law. As to the first issue, by Order entered October 14, 2014, the trial found that the loan from Reliant to the Bushes is a full recourse transaction and that they are liable to Reliant for the entire amount of the deficiency. Concerning the foreclosure sale price of StarPointe, by Memorandum and Order entered October 22, 2014, the trial court found that the Bushes' evidence concerning value did not overcome the presumption afforded Reliant, pursuant to Tenn. Code Ann. § 35-5-118, that the foreclosure sale price equaled the fair market value on the date of the foreclosure sale.

*Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217, 221-23 (Tenn. Ct. App. 2016) ("*Bush I*"). This Court in *Bush I* affirmed the Trial Court's conclusion that the note was a "full recourse transaction," that Plaintiffs were both personally liable under the note, and that the foreclosure sale price was not materially less than the fair market value. *Id.* at 232, 239. Our Supreme Court denied Plaintiffs' application for permission to appeal.

Prior to trial in *Bush I*, Plaintiffs filed a complaint against the Bank, alleging in part that the note was a nonrecourse note and that the foreclosure sale price was materially less than the fair market value. They argued that the Bank's filing of its cause of action against them in *Bush I*, filed in spite of the "Third Party Agreement" which purportedly rendered the note nonrecourse, resulted in direct and proximate damages to them. Plaintiffs voluntarily non-suited their complaint a few months later in September 2014.

A year later, in September 2015, Plaintiffs, acting *pro se*, filed another complaint, bringing claims for fraudulent misrepresentation and inducement. The second lawsuit was similar to the first. The Bank filed a motion to dismiss; the Trial Court granted the motion to dismiss; Plaintiffs appealed; and this Court affirmed the Trial Court in *Bush v. Commerce Union Bank*, 523 S.W.3d 56 (Tenn. Ct. App. 2017) ("*Bush II*"). This Court in *Bush II* explained the following:

At the time of the hearing and the entry of the Trial Court's order on Reliant's motion to dismiss, the appeal of *Reliant v. Bush* [*Bush I*] was pending before this Court. Both the instant suit and *Reliant v. Bush* involve the same parties. There is no question that this Court had both subject matter jurisdiction and personal jurisdiction over the parties in *Reliant v.*

- 4 -

*Bush*.  Furthermore, the instant suit and *Reliant v. Bush* involve identical subject matter.  Specifically, *Reliant v. Bush* was a post-foreclosure action involving the Bushes' default on the Multipurpose Note and Security Agreement, the renewals of the Multipurpose Note and Security Agreement, and the Forebearance Agreement.  In the Instant Complaint, the Bushes seek to re-litigate issues surrounding the Multipurpose Note and Security Agreement, specifically requesting "That the Multipurpose Note and Security Agreement dated November 30, 2007 with the separate Third Party Agreement be honored for its clear non-recourse provision," and "That the Renewals and Forbearance Agreement be voided because they were fraudulently induced by [Reliant] upon [the Bushes]."

All four elements of the doctrine of prior suit pending were present at the time the Trial Court entered its order granting Reliant's motion to dismiss. The doctrine of prior suit pending applies to the instant case, and the Instant Complaint correctly was dismissed.  As the Trial Court should have dismissed the Instant Complaint on the basis of prior suit pending, the Trial Court should not have addressed the remaining grounds for dismissal, and we likewise will not address them.

*Id.* at 61.  Our Supreme Court denied Plaintiff's application for permission to appeal.

In May 2017, Plaintiffs filed a Tennessee Rule of Civil Procedure 60.02 motion for relief from the final judgment in *Bush I*, alleging mistake and fraud.  The Trial Court, with a new judge presiding, granted the motion in part, finding that the Trial Court in *Bush I* had previously made "mistakes of law and fact" "relating to the determination of the Property's fair market value." *Reliant Bank v. Bush*, No. M2018-00510-COA-R3-CV, 2018 WL 6828881, at *2 (Tenn. Ct. App. Dec. 28, 2018) ("*Bush III*").  The Trial Court determined that the Bank's expert's appraisal was "not merely inferior" to Plaintiff's expert's but was also based upon questionable data. *Id.*  The Trial Court "found the fair market value of the property to be $1,520,000 at the time of the foreclosure sale and that the sale price of $1,050,000 was 'materially less' than the fair market value." *Id.*  The Trial Court "reduced the deficiency component of its judgment, the amount of the judgment exclusive of attorney's fee and discretionary costs, from $640,783.41 to $99,736.40." *Id.*  On appeal in *Bush III*, this Court reversed the Trial Court, finding that it had erred in granting the Rule 60.02 motion because it was untimely filed. *Id.* at *3.  Our Supreme Court denied Plaintiffs' application for permission to appeal.

Plaintiffs next filed a pleading titled "Motion Requesting INDEPENDENT ACTION by the Court for '*FRAUD UPON THE COURT*' by JUDGE JAMES G. MARTIN III AND TN APPELLATE JUDGE FRANK CLEMENT" in November 2019.[2] Plaintiffs argued that the *Bush I* judges had committed fraud on the court by "ignoring or omitting key parts of the parties' contract that favored" them. *Reliant Bank v. Bush*, 631 S.W.3d 1, 4 (Tenn. Ct. App. 2021) ("*Bush IV*"). The Trial Court dismissed the motion *sua sponte*, finding that it lacked subject matter jurisdiction and that the Board of Judicial Conduct had exclusive jurisdiction over complaints against judges. *Id.* at 5. Plaintiffs filed another appeal, which would become *Bush IV*. This Court in *Bush IV* affirmed the Trial Court, albeit for different reasons. The *Bush IV* Court found that "the undisputed facts set forth in the record demonstrate that Appellants have not shown their entitlement to the rare and exceptional relief offered in the Rule 60.02 independent action." *Id.* at *13. Our Supreme Court denied Plaintiffs' application for permission to appeal.

Plaintiffs next filed a complaint against Defendants, Judge Martin, Judge Clement, and Judge Stafford in the United States District Court for the Middle District of Tennessee ("the District Court"). They argued, *inter alia*, that their claim arose "under color of Federal Law to correct the injustice of fraud upon the court by state officials, whose '*acts(s) or omission take in such officer's judicial capacity*' [§1983] or as '*judges . . . pretending to act in the performance . . . of official duties*' [§ 242] have intentionally pretermitted and covered-up fraud committed by an FDIC bank against Plaintiffs; and in doing so, have denied Plaintiffs' due process." The District Court dismissed Plaintiffs' claims for lack of subject-matter jurisdiction "based on *Rooker-Feldman* and the claims against the judicial defendants based on sovereign immunity."[3] *Bush v. Reliant Bank*, No. 22-5656, 2023 WL 5275025, at *2 (6th Cir. Apr. 10, 2023), *cert. denied,* 144 S. Ct. 491 (2023), *reh'g denied,* 144 S. Ct. 1024 (2024). The Sixth Circuit of the United States Court of Appeals affirmed the District Court. *Id*. *2-4. The United States Supreme Court denied Plaintiffs' petition for writ of certiorari.

Plaintiffs filed a new complaint against Defendants in the Trial Court in March 2024. They alleged fraudulent breach of contract, once again arguing that the Bank's filing of its deficiency action in *Bush I*, in spite of the nonrecourse nature of the note, caused them damages. Defendants filed a motion for sanctions pursuant to Tennessee Rule of Civil Procedure 11.03(1)(a), alleging that Plaintiffs' sixth collateral attack on a final, non-appealable judgment was frivolous. Defendants argued that Plaintiffs' new complaint was frivolous because all of their claims were barred by the doctrines of claim

---

[2] Judge Martin was the judge who presided over the trial court proceedings in *Bush I*, and Judge Clement was the authoring judge of *Bush I*.

[3] "The *Rooker–Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012).

preclusion and issue preclusion. They noted that Plaintiffs had raised the same issues adjudicated in *Bush I*—whether the note was a nonrecourse note and whether the foreclosure sale price was materially less than fair market value. They also argued that Plaintiffs' claims were barred by the savings statute, Tenn. Code Ann. § 28-1-105; the statute of limitations for breach of contract; and the statute of limitations for fraud. According to Defendants, Plaintiffs knew or should have known this, arguing:

> Both the state and Federal courts have informed the Bushes that they have exhausted their remedies for seeking relief from the Bush I judgment. *See Reliant Bank v. Bush*, 631 S.W.3d at 11 (identifying the multiple remedies available to the Bushes for seeking relief from the judgment, and noting that all were "ultimately unsuccessful for a variety of reasons."); *Bush v. Reliant Bank*, 2022 WL 2359635, at *4 (M.D. Tenn. 2022) ("*Rooker-Feldman* bars [the Bushes] from bringing further claims of fraud against Reliant Defendants.").

Defendants further argued that Plaintiffs' claims against Mr. Ard, the Bank's former president, were frivolous because Plaintiffs were aware that Mr. Ard died in June 2022, yet filed a suit eighteen months after his death. Citing to Tenn. Code Ann. §§ 30-2-306, -307, and -310, Defendants noted that claims against an estate arising from a debt of the decedent are barred unless filed within twelve months from the date of death.

Defendants stated that they had complied with the twenty-one day safe harbor period by serving Plaintiffs with the Rule 11 sanctions motion at least twenty-one days before filing it in the Trial Court. Plaintiffs did not withdraw their complaint. Defendants asked for the following sanctions to be imposed: (1) dismissal of the complaint with prejudice and all costs taxed to Plaintiffs; (2) order Plaintiffs to pay Defendants' reasonable attorney's fees and expenses in filing the motion; and (3) order that any future filings by Plaintiffs against Defendants be subject to a pre-filing screening process to ensure that future frivolous filings are screened and disposed of before Defendants are required to respond.

After a hearing on May 30 and June 14, 2024, the Trial Court entered an order granting Defendants' motion for sanctions, finding Plaintiffs violated Rule 11.02, explaining:

> Having considered the Motion for Sanctions, the Bushes' response, the arguments of Dr. Bush and counsel for the Defendants at the hearings, the exhibits introduced by the Defendants at the June 14, 2024 hearing, and the opinion of the Tennessee Court of Appeals in the case of *Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217, 226 (Tenn. Ct. App. 2016) (of which this Court takes judicial notice), the Court find[s]

that the Plaintiffs filed the Complaint in this Case No. 24CV-53410 in violation of Tenn. R. Civ. P. 11.02(1), -(2) and -(3).

The Trial Court dismissed the complaint with prejudice, granted Defendants' request for attorney's fees and expenses incurred in filing the motion, and ordered that Probate Master Jenny Parker act as a Special Master to review Plaintiffs' future filings to determine if they satisfy Rule 11.02 and make a report and recommendation to the Presiding Judge of the Trial Court. The Trial Court further ordered as "a special condition to the Plaintiffs' right to bring new civil actions, the Plaintiffs shall have satisfied any judgment for attorney's fees and expenses awarded by the Court in connection with the Motion for Sanctions." This Order also stated that "[t]he Court shall enter a further written Order detailing the findings and conclusions supporting its ruling."

In August 2024, the Trial Court entered a longer explanation of its holding in an order styled as a "Memorandum and Order." In it, the Trial Court explained why it granted Defendants' motion for sanctions. The Trial Court explained:

> The Bushes' *Complaint* violates Rules 11.02(1), (2) and (3) of the Tennessee Rules of Civil Procedure. The Bank Defendants introduced sixteen exhibits at the hearing on June 14, 2024. These exhibits and the opinion of the Tennessee Court of Appeals in the case of *Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217, 226 (Tenn. Ct. App. 2016) demonstrate that the Bushes' *Complaint* is the sixth[4] unsuccessful attempt to litigate claims that have been adjudicated adverse to the Bushes five previous times. The Bushes' claims have no merit. Court after court—at the trial and appellate levels—have repeatedly ruled against the

---

[4] The first attempt by the Bushes to litigate these claims, including their "non-recourse" argument, was before the trial court in the original action. The original trial court fully addressed the Bushes' claims and arguments in two detailed written orders entered in October of 2014. *See* Trial Exs. 1 and 2. The Bushes requested appellate review of the original trial court and the original trial court was affirmed on appeal. *See Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217 (Tenn. Ct. App. 2016). A month before the original action went to trial, the Bushes initiated a second action, albeit a brief one, making the same claims and arguments. *See* Trial Ex. 3. The merits of their case were not addressed in this action and the complaint was voluntarily dismissed two months after it was filed. *See* Trial Ex. 4. The third action in which they attempted to relitigate their claims and arguments was initiated by the Bushes on September 9, 2015, and resulted in an involuntary dismissal on December 7, 2015, for failure to state a claim, *inter alia*. *See* Trial Exs. 5 and 6. The Bushes sought Rule 60 relief from the original trial court and that court fully addressed, yet again, all of the Bushes' claims and arguments when denying their motion. *See* Trial Ex. 7. On November 6, 2019, the Bushes initiated a fourth action originating from the same facts and presenting identical claims and arguments as those previously dismissed. *See* Trial Ex. 8. This action was dismissed on procedural grounds shortly thereafter. *See* Trial Ex. 11. The Bushes then initiated a fifth action in federal court, reasserting the same arguments as previously stated. *See* Trial Ex. 12. Finally, the Bushes have initiated the present suit, which constitutes the sixth action addressing the same subject matter, claims, and legal arguments. *See* Trial Ex. 13.

Bushes. No matter how many times the Bushes may refuse to acknowledge reality, no amount of wishing for a different result can make it so. The Bushes have had more than reasonable access to the courts. The public interest in finality substantially outweighs the Bushes' persistent efforts to undo those results.[5]

(Original footnotes included but renumbered.) Plaintiffs appealed.

## Discussion

Plaintiffs raise three issues on appeal, but these can be consolidated and restated as follows: whether the Trial Court erred by granting Defendants' motion for sanctions by finding that Plaintiffs' claim of fraudulent breach of contract had been fully adjudicated in *Bush I*.[6] Defendants request that this Court find the appeal frivolous, pursuant to Tenn. Code Ann. § 27-1-122, and that they be awarded damages, including attorney's fees, expenses, costs, and interest on the judgment.

This Court has previously explained the standard of review and applicable principles as follows:

> We review a trial court's ruling on a Rule 11 motion under an abuse of discretion standard. *Hooker v. Sundquist*, 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002). An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable. *Id.* (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000)). Our review of Rule 11 decisions is governed under this deferential standard since the question of whether a

---

[5] It would be inaccurate to refer to the Bushes' litigation history as "Quixotic." Don Quixote may have been suffering from a delusion that windmills were actually hostile giants, but the windmills themselves were real. The Bushes on the other hand are simply denying reality: there is no army of hostile giants, and there are no windmills either. The Bushes repeat their demonstrably false claim that no court has ever adjudicated their theory that the debt they incurred was a non-recourse loan. The truth, however, is that the very first court to touch this case heard and fully adjudicated this claim. That judgment was affirmed by the Court of Appeals which devoted substantial analysis to the Bushes' "non-recourse" argument. *See Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217, 226-232 (Tenn. Ct. App. 2016). This same outcome has followed every subsequent lawsuit the Bushes have initiated. Enough is enough. There is no fraudulent conspiracy to deprive the Bushes of their day in court. The Bushes' campaign of harassment and bad faith frivolous litigation must end. It is this Court's obligation to say so and enter the appropriate order. There are no giants and there are no windmills either.

[6] After oral argument, Plaintiffs filed a "Post-Oral Argument Supplement." Concluding that this filing failed to comport with Tenn. R. App. P. 27(d), we struck the filing. Plaintiffs filed another list of supplemental authorities on July 28, 2025. Concluding that this second supplementation of authorities complies with Rule 27(d), we accept and consider this latter supplementation.

Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the attorney's conduct. *Id.* We review the trial court's findings of fact with a presumption of correctness. *Id.*; Tenn. R. App. P. 13(d).

\* \* \*

The Tennessee Supreme Court has noted that the main objective of Rule 11 is to deter attorneys from violating Rule 11.02. Its main purpose is to deter "abuse in the litigation process." *Andrews v. Bible*, 812 S.W.2d 284, 292 (Tenn. 1991). The supreme court has characterized Rule 11 as a "potent weapon that can and should be used to curb litigation abuses." *Id.* At the same time, however, the supreme court has advised the trial courts to impose Rule 11 sanctions only with "utmost care." *Id.*

The courts are to apply a standard of "objective reasonableness under the circumstances" when determining whether conduct is sanctionable under Rule 11. *Hooker v. Sundquist*, 107 S.W.3d at 536 (citing *Andrews*, 812 S.W.2d at 288). "Sanctions are appropriate when an attorney submits a motion or other paper on grounds which he knows or should know are without merit, and a showing of subjective bad faith is not required." *Id.* (quoting *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 765 (Tenn. Ct. App. 2001)). However, when deciding whether to impose sanctions under Rule 11, the trial court should consider all the circumstances. *Id.* "[T]he trial judge should consider not only the circumstances of the particular violation, but also the factors bearing on the reasonableness of the conduct, such as experience and past performance of the attorney, as well as the general standards of conduct of the bar of the court." *Andrews*, 812 S.W.2d at 292 n. 4.

*Brown v. Shappley*, 290 S.W.3d 197, 200, 202-03 (Tenn. Ct. App. 2008).

Defendants alleged that Plaintiffs violated Tennessee Rule of Civil Procedure 11.02, which provides in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

**(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

- 10 -

**(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

**(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Rule 11 applies to both represented and unrepresented parties. *See Stigall v. Lyle,* 119 S.W.3d 701, 706 (Tenn. Ct. App. 2003) ("Although pro se litigants are nearly always accorded more leniency than trained attorneys, they are not excused from compliance with our rules of procedure.").

Defendants claimed in their Rule 11 motion that Plaintiffs violated Rule 11.02 by bringing claims that were "res judicata," in that their claims had previously been and repeatedly raised by Plaintiffs and rejected by courts. This Court has previously explained "res judicata" as follows:

Under the doctrine of *res judicata,* a final judgment on the merits that is rendered by a court of competent jurisdiction concludes the rights of the parties and their privies, and, with respect to them, bars a subsequent action involving the same claim or cause of action. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995). It is a claim preclusion doctrine that prohibits multiple lawsuits between the litigants and their privies with respect to the issues which were or could have been litigated in the prior suit. *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). Accordingly, *res judicata* applies not only to issues actually raised and adjudicated in the prior lawsuit, but to "all claims and issues which were relevant and which could reasonably have been litigated in a prior action." *Am. Nat'l Bank and Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). It is a "rule of rest" that promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976) (quoting 2 Freeman on Judgments, § 626, 1320 (5th ed. 1925)). In order for the doctrine of *res judicata* to apply, the prior judgment must have been final and concluded the rights of the parties on the merits. *Richardson,* 913 S.W.2d at 459. Additionally, the lawsuits must involve the same parties and the same cause of action or identical issues. *Id.* However, a party's failure to raise an issue or theory does not preserve that issue or theory as a ground for a subsequent lawsuit.

*Brown*, 290 S.W.3d at 200-01.

Our Supreme Court also has explained:

> The party asserting the defense of res judicata bears the burden of demonstrating:
>
> (1) that the underlying judgment was rendered by a court of competent jurisdiction;
>
> (2) that the same parties or their privies were involved in both suits;
>
> (3) that the same claim or cause of action was asserted in both suits; and
>
> (4) that the underlying judgment was final and on the merits.

*Regions Bank v. Prager*, 625 S.W.3d 842, 847-48 (Tenn. 2021).

In *Bush I*, the Bank brought a claim for a deficiency judgment against Plaintiffs. Plaintiffs denied liability for the deficiency, arguing that the note was nonrecourse and that the foreclosure sale price was materially less than fair market value. These issues were fully adjudicated in the Trial Court with the Trial Court rejecting both of Plaintiffs' arguments, this Court affirming, and the Tennessee Supreme Court denying permission to review. We discern no reason why the Trial Court in *Bush I* was not a court of competent jurisdiction, and Plaintiffs do not contend otherwise. The first element of res judicata is satisfied.

As for the second element, the Bank and Plaintiffs are the same parties in *Bush I* as they are in the present case. Defendants Ard, Belote, and DeBerry were not listed as parties in *Bush I*.[7] However, Ard as former president of the Bank, and Belote as senior vice-president of the Bank, were in privity with the Bank. *See State ex rel. Johnson v. Gwyn*, No. M2013-02640-COA-R3-CV, 2015 WL 7061327, at \*8 (Tenn. Ct. App. Nov. 10, 2015) (finding that the Tennessee Bureau of Investigation Director, "while sued in his individual capacity, clearly is involved in this matter in his capacity as TBI Director," which was "sufficient commonality of interest, in our view to establish privity").

With respect to the third and fourth elements, Plaintiffs clearly seek to relitigate the issues from *Bush I* under the guise of a claim for fraudulent breach of contract against

---

[7] Defendant DeBerry is listed in the caption of the complaint as a defendant, but Plaintiffs fail to mention him any further in their complaint. We, accordingly, conclude that DeBerry is not a proper party. *See Goss v. Hutchins*, 751 S.W.2d 821, 824 (Tenn. 1988) ("The caption requirement of Rule 10 is merely for identification purposes, and does not control who is a party in the action. . . . The issue of who is a proper party defendant must be determined from the allegations of the complaint.").

Defendants.  Their claim for fraudulent breach of contract hinges upon their interpretation of the note as a nonrecourse note, an interpretation that was already rejected by the Trial Court and this Court in *Bush I*.  In effect, their complaint in the present iteration of this action is nothing more than an attempt at challenging the Trial Court's interpretation of the note in *Bush I*.  Plaintiffs had an opportunity to challenge the Trial Court's findings on appeal, which they did.  This Court, however, specifically affirmed the Trial Court's finding that the note was a full recourse note.

The *Bush I* Court specifically rejected the same arguments presented by Plaintiffs in the present case.  The *Bush I* Court explained:

> Dr. Bush contends that the trial court erred in finding that the note was intended by all parties to be a full recourse note.  He contends it was a nonrecourse note.  In support of this contention, he relies on the fact that he signed the Third Party Agreement paragraph on page three of the Original Note.  The Third Party Agreement reads:
>
> > I own the Property described in the Security section of this Note and Security Agreement and I agree to give you a security interest in that Property.  I am not personally liable for payment of this debt.  If the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt.  By signing, I agree to the terms of this Note and Security Agreement and acknowledge receipt of a complete copy of this Loan.
>
> * * *
>
> Dr. Bush does not dispute that he is a borrower under the note.  He argues, however, that he is not personally liable under the note because the Third Party Agreement paragraph is a "valid and enforceable attached separate rider and provision of the original contractual loan agreement" that he negotiated with Reliant's President, DeVan Ard.  Reliant insists that the note was intended by all parties to be a full recourse note.  Mr. Ard testified that "all of the communication that the bank had with [Dr.] Bush, the term sheet, the loan approval form, all of the communication was consistent that [Dr. Bush] would be personally liable on the loan."  Reliant also insists that Dr. Bush's signature of the Third Party Agreement paragraph was a mistake because it contradicts all other provisions of the note and because a borrower cannot be a third-party to his or her own loan.  The outcome of this issue rests on a contractual interpretation of the note between Reliant and the Bushes.

- 13 -

In the instant case, the trial court specifically found the Original Note ambiguous in terms of the interplay between the language identifying the borrowers and the borrowers' personal liability and the language contained in the Third Party Agreement paragraph. We agree.

The first page of the note provides: "Borrower: 'I', 'Me' and 'My' Means Each Borrower Below Jointly and Severally," and identifies the borrowers as "BYRON V BUSH, DDS AND KELLY D BUSH." The paragraph immediately following the foregoing provides: "NOTE: For value received, I promise to pay to you, or any other holder, at the address above, the principal sum of: One Million Five Hundred Thousand and 00/100 [$1,500,000.00]." Consistent with their designation on page one as the borrowers, the Bushes also signed as the borrowers on page three of the Original Note where each of them acknowledged that they "understand and agree that my obligation is to pay this loan amount," and that "[t]his obligation is separate and independent of any other person's obligation to pay it." Dr. and Mrs. Bush also agreed that in the event of default, they would pay all reasonable costs incurred by Reliant to collect the note, including attorneys' fees, court costs, and other legal expenses. All of this indicates a clear intent by the parties that the note was to be a full recourse note.

In addition to signing as borrower, Dr. Bush—but not Mrs. Bush—signed the Third Party Agreement paragraph, which identifies him as the owner of the security interest of the note and states that he, Dr. Bush, is not personally liable. Dr. Bush insists that this paragraph is unambiguous and reflects the true intentions of the parties. Essentially, he requests that we ignore all other provisions of the Original Note wherein he and Mrs. Bush are specifically and repeatedly identified as the borrowers under the note with an obligation to pay the loan amount. We decline to do so because "in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph."

Accordingly, in construing the language of the Third Party Agreement paragraph in the context of the note as a whole, . . . we can only conclude that the Original Note is susceptible to more than one reasonable interpretation as to Dr. Bush's personal liability, and is, therefore, ambiguous. We therefore affirm the trial court's finding that the language is ambiguous.

If a contract is ambiguous, a court may look beyond the four corners of the document and consider extrinsic parol evidence in order to determine the parties' intention. Accordingly, we now consider whether the trial court, in construing the Original Note with the help of the parol evidence, arrived at the correct interpretation.

In ruling on the intended liability of the Bushes under the note, the trial court concluded that both Dr. and Mrs. Bush are personally liable to Reliant for the entire amount of the Original Note including interest accrued and attorneys' fees, less the fair market value of StarPointe as of the foreclosure sale date. The trial court's conclusion is based on the finding that the promissory note made by the Bushes to the order of Reliant was *intended by all parties* to be a full recourse note as to both Dr. and Mrs. Bush. In arriving at this conclusion, the trial court's order states that it considered all information presented, including the testimony of witnesses at the trial and all exhibits, including but not limited to, the Original Note, the Term Sheet, the Loan Application, and the Forbearance Agreement. The trial court also set forth its specific findings of fact and conclusions of law on this issue.

* * *

All of the evidence in this case except the testimony of Dr. Bush, which the trial court found was not credible, supports a finding that Dr. Bush knew that he was personally liable under the note. As noted earlier, we presume that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise. Further, the trial court's findings are accorded strong deference when they are based on witness testimony, "especially where issues of credibility and weight of oral testimony are involved."

Considering the evidence in this record, we have concluded that the evidence does not preponderate against the trial court's findings, and we agree with the court's conclusion based upon these findings. We therefore affirm the trial court's holding that the note is a full recourse transaction and that Dr. and Mrs. Bush are both personally liable under the note.

*Bush I*, 512 S.W.3d at 226-229, 232 (citations and footnotes omitted). *Bush I* clearly and conclusively affirmed the Trial Court's determination that the note was a full recourse note. The *Bush I* Court also concluded that the Trial Court had correctly determined that the foreclosure sale price was not materially less than the fair market value. *Id.* at 239. Plaintiffs' attempt to relitigate these issues under a claim for fraudulent breach of contract

- 15 -

does not change the fact that these issues have been conclusively decided and are therefore barred from relitigation under the doctrine of res judicata.

During oral argument, Dr. Bush acknowledged that Plaintiffs argued that the note was nonrecourse during trial in *Bush I* but contends this issue was not fully adjudicated because the Trial Court did not consider Paragraph 19 of the note, which purportedly rendered the note, in conjunction with the Third Party Agreement, unambiguously nonrecourse. First, Plaintiffs have not presented compelling evidence that the Trial Court failed to consider Paragraph 19. Dr. Bush also affirmed during oral argument that he presented all of this information to the Trial Court in *Bush I*. As this Court found in *Bush I*, "the trial court's order states that it considered all information presented, including the testimony of witnesses at the trial and all exhibits, including but not limited to, the Original Note, the Term Sheet, the Loan Application, and the Forbearance Agreement." *Id.* at 229. Simply because the Trial Court may not have explicitly cited Paragraph 19 in its judgment does not mean it did not consider Paragraph 19.

Even assuming the Trial Court somehow erred in its interpretation of the note and failed to fully consider Paragraph 19, this Court affirmed the Trial Court and our Supreme Court declined to grant Plaintiffs permission to review this Court's decision, meaning the issue has been settled. *Regions Bank*, 625 S.W.3d at 847 ("[A]pplication of res judicata 'is not based on any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation.'") (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)); *Boyce v. LPP Mortgage Ltd.*, 435 S.W.3d 758, 769 (Tenn. Ct. App. 2013) ("[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.") (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The note was adjudicated a full recourse note over ten years ago, and each of Plaintiffs' subsequent lawsuits have been failed attempts to relitigate this issue.

Because the Trial Court previously decided, and this Court affirmed, that the note was a full recourse note and the foreclosure sale price was not materially less than fair market value, Plaintiffs violated Rule 11.02 by raising these issues again, albeit under the title of "fraudulent breach of contract." Res judicata rendered their action against the Bank unviable, and Plaintiffs knew or should have known this before filing their most recent complaint.[8] Discerning no abuse of discretion in the Trial Court's sanctions against Plaintiffs, we affirm the Trial Court's judgment.

---

[8] Defendants raised several other reasons why Plaintiffs' complaint was sanctionable and do so again on appeal. We need not address these other reasons, however, because res judicata alone sufficiently serves as a basis for the complaint's dismissal and sanctions against Plaintiffs, and the Trial Court did not address these other legal arguments.

Defendants request an award of damages, including costs, interest on the judgment, and attorney's fees and expenses incurred on appeal, arguing that Plaintiffs' appeal is frivolous, pursuant to Tenn. Code Ann. § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed." *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Indus. Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)).

We conclude that Plaintiffs' appeal is frivolous, having had little to no prospect of success. Exercising our discretion, particularly in light of Plaintiffs' vexatious, unsuccessful, and unending pursuit to overturn the Trial Court's judgment in *Bush I* in both state and federal courts, we grant Defendants' request for an award of damages, including costs, interest on the judgment, and attorney's fees and expenses incurred on appeal.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's judgment and award Defendants damages, including costs, interest on the judgment, and attorney's fees and expenses incurred on appeal. We remand for collection of costs below and calculation of Defendants' damages incurred on appeal. Costs of the appeal are taxed against the appellants, Kelly D. Bush and Byron V. Bush, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE